### In re OAK LEAF COAL CO.

(District Court. N. D. Alabama, Jasper Division. July 31, 1915.)

#### No. 89.

1. EASEMENTS ⊚⟹51—RESERVATION—CONSTRUCTION.

A reservation in a deed of the "right to build railroads through [land conveyed] in order to reach other lands beyond and above," when read in connection with a reservation of minerals and mining rights, includes lands owned by the grantor at the time of the execution of the deed, and coming within the designation as being "beyond and above," and also includes lands subsequently acquired by the grantor engaged in acquiring mineral lands and in bodying them up for profitable mining propositions, and also includes lands to which the grantor does not obtain title, but which are necessary for the utilization of his own lands.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 109–112; Dec. Dig. ⊚⟹51.]

2. EASEMENTS ⊚⟹26—RESERVATION—CONSTRUCTION.

A deed contained a reservation of the minerals and usual mining rights and the right to build railroads through the land conveyed to reach other

---

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lands beyond and above. A lessee of the land the grantor then owned and subsequently acquired obtained a lease of other lands for the purpose of mining. The grantor's land could not alone be profitably used for mining. *Held*, that the reservation for railroads terminated when the mineral was exhausted in all the lands of the lessee.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 72½–74, 80–82; Dec. Dig. ☞26.]

3. EASEMENTS ☞18—RESERVATION—RIGHT OF WAY.

Where a right of way in a deed was not defined, but was actually located on the ground with the acquiescence of the holder of the land under the grantee, the right of way became defined.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 103–107; Dec. Dig. ☞48.]

In Bankruptcy. In the matter of the Oak Leaf Coal Company, bankrupt. Petition by one Hood to review order of referee permitting purchasers at the trustee's sale to take possession of a railroad. Petition for review denied.

A. F. Fite, of Jasper, Ala., for petitioner.
M. M. Ullman, of Birmingham, Ala., for respondent.

GRUBB, District Judge. This is a review by the respondent of an order made by the referee, upon the petition of Shannon and Lunsford, purchasers at the trustee's sale of the property of the bankrupt, including a mining lease, executed to the bankrupt by the University of Alabama, and a right of way, railroad track, and roadbed, which ran over the lands of the respondent, Hood. The order directed respondent to permit the petitioners to take possession of the railroad. The jurisdiction of the bankruptcy court to make the order is conceded. The right of the petitioners depends upon the construction of a reservation in a deed, executed by B. M. Long to his daughter, Carrie Garner, the grantor of the respondent herein, conveying certain lands, with a reservation to the grantor of minerals and usual mining rights, also certain parts of the river and creek bank, and the "right to build railroads through said land in order to reach other lands beyond and above."

The respondent contends that a proper construction of the reservation would limit the right to build railroads to those built for the purpose of reaching the lands of the grantor then owned or thereafter to be acquired, and as the petitioners, at the time of the filing of the petition, were not mining coal on any lands ever owned by the original grantor, but only from lands the mining rights to which were acquired from the University of Alabama, the petitioners acquired no title or right to the possession and use of the railroad over the respondent's lands, by their purchase at the trustee's sale, and were not entitled to be put into possession of them. On the other hand, the petitioners contend that a proper construction of the reservation in the deed from B. M. Long to Carrie Garner does not limit the lands to be reached by the railroad to be constructed to those owned by B. M. Long, when the deed was executed, or to those which he afterwards acquired, but is broad enough to include lands in which B. M.

Long or his personal representatives or assigns were interested in having the railroad reach, even though they were never owned by him.

[1] At the time of the execution of the deed to Carrie Garner, the grantor, B. M. Long, was a large owner of coal lands in the vicinity of the lands conveyed. At that time he owned lands which came within the designation of the reservation in the deed as being "beyond and above" those the surface of which was conveyed to Mrs. Garner. He was engaged in acquiring mineral lands and in bodying them up, so as to make profitable mining propositions. It is to be presumed that he reserved the rights described in his deed to his daughter in his own interest and that of his heirs and assigns, and for the purposes of the occupation and projects he was then engaged in. It would be a narrow construction that would limit the reservation to lands then owned by the grantor, as distinguished from those that he might afterwards acquire. The same advantage that would come to the lands then owned would come equally to those thereafter to be acquired, by reason of the reservation. The purpose of the grantor in making the reservation applied equally to the class of then-owned, and of after-acquired, lands. This is particularly true of one who, like the grantor, was constantly acquiring new mineral lands. It would also be equally advantageous to reserve the right to build railroads to reach lands to which the grantor never got title, since it might be impossible for him to utilize, either by mining or sale, his own lands, except in connection with the adjoining lands of others. As the right of way over the Hood lands was the only available one to reach lands north of those lands, it is reasonable that the reservation was intended to cover such lands, north of the Hood lands, as it was probable the grantor or his heirs might be interested in having served by the railroad, in connection with his own lands "above and beyond" the Hood lands. If the grantor or his heirs had leased the University lands, and operated them in connection with his own, north of the Hood lands, they being too small a proposition to operate by themselves, the interest of the grantor in having the railroad reach the University lands would be evident. If he could only dispose of his own lands north of the Hood lands, in connection with the University lands, for the same reason, it would be to his evident interest to be able to confer the right on his grantee or lessee to reach the mineral in the University lands, as well as that in his own lands north of the Hood lands. Otherwise, his chance to dispose of his own lands would be impaired or destroyed. It seems reasonable that the grantor intended the reservation to be as broad as the necessity. If the necessity included other lands than those then owned by him, or those thereafter acquired by him, it should be held to extend to and cover such other lands.

[2] It was stated on the hearing that the Oak Leaf Coal Company leased the lands of the grantor north of the Hood lands from the personal representative of B. M. Long, in connection with the University lands, from which its successors, the petitioners, are now mining, and that the lands leased from the Long estate would not of themselves have justified a mining proposition. If the reservation be construed to exclude lands other than those owned by the Long estate,

the reservation would not be broad enough to accomplish what the grantor evidently intended by the reservation; i. e., the retention of ample means for the proper development of his own coal lands, north of the lands conveyed to Mrs. Garner. It would seem reasonable to so construe the reservation as to make it sufficient for the evident purpose the grantor had in mind in inserting it in the deed to his daughter, which was the full development by operation, sale, or lease of his own lands, north of those conveyed. The interest of the grantor or his heirs or representatives in the application of the reservation in favor of the University lands is shown by the lease that was executed by the Long estate to the predecessor of the petitioners to the minerals in the lands of the estate north of the Hood lands, and by the subsequent execution of the quitclaim deed to the right of way to the Oak Leaf Coal Company. The limit of the reservation is the interest of the grantor or his heirs and assigns in the mineral of the lands then owned by him, or thereafter acquired, north of those conveyed. When that interest ceases, the purpose of the reservation ceases, and with it the right to further possess the right of way. Though the lease to the Oak Leaf Coal Company from the Long estate has expired, the interest of the lessee in the railroad remains till the coal is exhausted in the University lands, leased by the predecessors of the petitioners at the same time as those leased from the Long estate. When the interest of the petitioners in the coal in the University lands, so leased, ceases, their interest in the right of way will also cease. It exists only in favor of the grantor or his heirs and those in privity with him.

[3] The right of way is not defined in the grant, but has been actually located on the ground, with the acquiescence of the respondent, and this as effectually serves to define the grant as would a description in the deed. The grant, so defined, ceases to be uncertain, and no use of the right of way, other than one that is reasonable and necessary to develop the lands covered by the reservation, would be permitted. The context of the reservation shows that the right of way was reserved for the purpose of mining operations and not for a general commercial railroad.

The petition for review is denied, at the costs of the respondent and petitioner, Hood.