WATTSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.    September 8, 1919.)

No. 3260.

1. WATERS AND WATER COURSES ⬡➞130—DRAINAGE DISTRICTS ARE OWNERS OF WATERS COLLECTED IN CANALS OR DITCHES.

Under Drainage Act of Arizona, providing for the organization of drainage districts, with power to acquire lands for canals and ditches, and expressly that the legal title to all property acquired by a district under its provisions, "including all waters collected in, controlled, or handled by means of any drainage works constructed or acquired," shall immediately vest in the district, the waters in such a canal or ditch are not subject to private appropriation under the laws of the state, but may be sold or otherwise disposed of by the district to carry out the purposes of its organization.

2. WATERS AND WATER COURSES ⬡➞130—PERCOLATING WATERS NOT SUBJECT TO APPROPRIATION.

Percolating waters are not public waters subject to appropriation under the laws of a state relating to water rights, but when collected in a canal or ditch become the property of the owner of such canal or ditch.

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Suit in equity by the United States against Henry A. Wattson and Carroll A. Spicer. Decree for complainant, and defendants appeal. Affirmed.

Haas & Dunnigan, of Los Angeles, Cal., and Wright & Darnell, of Tucson, Ariz., for appellants.

Thomas A. Flynn, U. S. Atty., and John H. Langston, Asst. U. S. Atty., both of Phœnix, Ariz.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal to reverse a decree enjoining defendants from diverting or using any water flowing in a drainage canal of drainage district No. 1, Maricopa county, Ariz., and from interfering with the unobstructed flow of the waters in the canal.

The United States owned lands in the Gila River Indian reservation in Arizona. Drainage district No. 1, Maricopa county, Ariz., was organized in October, 1914, under the laws of Arizona. Chapter 5, title 55, pars. 5427–5509, Civil Code of Arizona, 1913. It is alleged that during February, 1916, the district began the construction of a drainage canal near a described point in Maricopa county, and continued the construction in a direction through the lands of the defendants; that the canal was completed about May, 1917; that from the time of the beginning of construction water began to accumulate in and flow in the drainage canal upon the lands of plaintiff, and that the canal was built through the lands of defendants during June and July, 1916; that prior to June and July the district bought from the defendants

and their predecessors in interest a right of way for the canal across the lands of the defendants; that such conveyances transferred title in fee for such rights of way for drainage; that the district was constructed to drain surplus overflow and percolated waters from the described lands of the defendants, and other lands owned by persons above and below the lands of the defendants; that by the laws of Arizona, heretofore cited, all the waters located in and controlled by means of the drainage canal constructed by the district were dedicated and set apart to the uses and purposes of the drainage district and that upon commencement of the construction, the drainage canal vested in the drainage district. Plaintiff further alleged that in September, 1917, the United States contracted with drainage district No. 1 and purchased and became the owner of all the water collected in, controlled, or handled by means of the drainage canal in district No. 1; that the lands of the United States were arid, and are occupied by the Pima Indians, and that some 2,500 acres have been leased; that about June, 1917, the occupants of the lands began to build ditches to convey the waters described from the drainage canal from the district to and upon the lands for purposes of irrigation, and have irrigated many acres and planted crops and used all the waters collected in the drainage canal for irrigation; that about May 1, 1918, the defendants Wattson and Spicer diverted certain of the waters flowing in the drainage canal described, and that all the land owned by the defendants and upon which the water so diverted from the drainage canal was used, is within and a part of drainage district No. 1.

The agreement between the drainage district and the United States, acting through the commissioner of Indian Affairs, after reciting that the district has constructed and is now operating a drain ditch for the purpose of draining the excess ground water from the agricultural land within the district, and that the outflow of the drain ditch is being maintained across certain lands in the Gila River Indian reservation, sets forth that whereas the District desires to secure from the United States a right in perpetuity to maintain and operate a drain ditch across the lands mentioned, with a right in perpetuity to discharge the waters collected by the drain ditch as then and thereafter constructed, and to be released from all liabilities which may arise by reason of construction and operation of the ditch across the Indian Reservation, and whereas the United States desires to control the use for irrigation of all water collected by the drain ditch, it is agreed that the district grant to the United States the right to the use of the water collected by means of the drain ditch and drainage work upon the condition that the United States will not obstruct the discharge and outflow of water from the end of the ditch at a point described in the contract. In consideration for this grant the United States granted and conveyed to the district a right of way across certain lands in the Indian reservation on which to maintain and operate the said drain ditch, and agreed to release the district from liability by reason of the construction of the drain ditch within the reservation without having obtained the necessary authority.

Defendants answered that since May 1, 1917, they had diverted water from the drainage canal, and pleaded that on the 9th of February, 1917, they filed notice of appropriation for 200 inches of the waters diverted by the drainage ditch, and again on April 20, 1917, also appropriated, pursuant to paragraphs 5837 and 5838 of the Revised Statutes of 1913 of Arizona, and claimed 200 inches additional, and used the waters for irrigation upon the lands belonging to the defendants. Defendants deny all obstruction of use by the United States.

At the hearing before the court it appeared that the Department of the Interior, through the Indian agent, also filed, claiming an appropriation of the waters, but that such filing was subsequent to the filing of Wattson and Spicer. No question is made over the fact that the lands within the drainage district had become so saturated with water that they were no longer useful for agricultural purposes until after the construction of the drain canal through them; but appellants argue that the district had no power to acquire, hold, or dispose of, or deal in water for irrigation or for any purpose other than drainage; that the water not used for drainage in the canal was open to appropriation; and that to the extent that waters in the canal were derived from the lands of the appellants, appellants could take the waters and use them.

[1] We quote the two paragraphs of the Drainage Act of Arizona (chapter 5, title 55, pars. 5452, 5440, Civil Code of Arizona, 1913) pertinent to the contentions before us:

"The legal title to all property acquired under the provisions of this chapter, including all water collected in, controlled or handled by means of any draining works constructed or acquired under the provisions of this chapter, shall immediately vest in such drainage district and shall be held by such district in trust for, and it is hereby dedicated and set apart to the uses and purposes set forth in this chapter. The board of directors are hereby authorized and empowered to hold, use, acquire, manage, occupy and possess said property as herein provided. Such board is hereby authorized and empowered to take conveyances, or other assurances, for all property acquired by it under the provisions of this chapter, in the name of such district, to and for the use and purposes herein expressed;" etc. "The board shall have the power, and it shall be their duty, to manage and conduct the business and affairs of the district; to make and execute all necessary contracts. * * * Said board shall also have the right to acquire, hold and possess, either by donation, purchase or condemnation, any land or other property, necessary for the construction, use, maintenance, repair and improvement, including extensions, of any works required for the purpose of drainage as provided herein, * * * and may perform all such acts as may be necessary to fully carry out the purposes of this chapter."

Plainly the underlying purpose of the statute is to permit organization by form of governmental corporation for the drainage or reclamation of agricultural lands in order that they may be made productive.

That the legal title to the right of way through appellants' lands was in the district is plain, for such right was acquired under the act, which provides that all property acquired shall immediately vest in the drainage district to be held in trust. All property expressly includes "all waters collected in, controlled or handled by means of any drainage works constructed or acquired" under the Drainage District Act.

Under these provisions the district held legal title to the right of way over the lands of appellants and to the waters collected or handled by means of the drainage canal constructed by the district. All such property so vested was dedicated and set apart for uses and purposes set forth in the statute. Thus the title to all waters which were collected in the canal immediately vested in the district in trust as provided. Waters, whether subterranean—that is, percolating—or surface drained, were included, provided they were collected or controlled or handled by means of the drainage works. We cannot see how there can be an exclusion of any waters that have come from the lands into the canal which have been included in the drainage district. The purpose of drainage being to take off excessive quantity of water, the landowners who are in the district have no ground of·complaint that the waters which collect in the canal are no longer theirs to do with as they would.

We next look into the extent of the control passed, and whether there is power of disposal of collected waters in the drainage district board. Of course, the trust under which the title to the water vests is for drainage uses and purposes. But, to make drainage a practicable success, the works must provide for place of discharge of any quantity of collected waters. The duty of management under paragraph 5440 hereinbefore quoted, and the duty and power to make and execute all necessary contracts and to acquire other land or other property for use and maintenance of the works are conferred, and the board may perform all such acts as may be necessary to carry out fully the purposes of establishing, building, and operating the drainage system. It is obvious that, if an abundance of water is drained from land, there must be a disposition of such superfluous water. To make provision for disposition of the excess is, therefore, a matter which is absolutely necessary in carrying out the object of the law and conducting the affairs of the district. As the board has explicit right to acquire land needed for the use and maintenance of any works required, and is vested with title to all waters collected by means of the canal or works, surely the power of disposition of the waters drained is but incidental to the authority conferred. Disposition of such waters might be by sale or contract not inconsistent with the purposes of the act; and drainage being accomplished, the particular method of disposition of the drained water is not of material interest to those whose lands are drained.

[2] The waters which have been collected in the canal are not subject to appropriation. They are not natural streams subject to disposition under the law of appropriation of the state. Paragraph 5337, Civ. Code of Arizona, gives the right to appropriate any of the unappropriated waters or surplus or flood waters in the state, and paragraph 5344 declares all rivers, creeks, and streams of running water in the state public, and applicable to the purposes of irrigation and mining, as provided by law. In Howard v. Perrin, 8 Ariz. 347, 76 Pac. 460, the Supreme Court of the state, in construing the relevant statutory provisions, held that there could be no appropriation except of a running stream flowing in natural channels, between well-defined

banks, and distinguished such natural stream from filtrating or percolating waters, which ooze through the soil beneath the surface in undefined and unknown channels, and which are therefore a component part of the earth, with no characteristics of ownership distinct from the land itself. This case was affirmed in Howard v. Perrin, 200 U. S. 71, 26 Sup. Ct. 195, 50 L. Ed. 374. There is little room to doubt the general rule that percolating waters are regarded as part of the soil and belong to the owner of the soil. The Supreme Court of Nevada in Cardelli v. Comstock Tunnel Co., 26 Nev. 284, 66 Pac. 950, said:

"Such waters are not like waters running in streams on the public domain of the United States. They are produced by the capital, labor, and enterprise of those developing them, and by such developing they become the property of those engaged in the enterprise. They are in the full and complete sense artificial * * * streams."

See, also, Willow Creek Irrigation Co. v. Michaelson, 21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687; Gould on Waters, §§ 280, 281; Gould v. Eaton, 111 Cal. 639, 44 Pac. 319, 52 Am. St. Rep. 201.

Appellants, not being authorized by law to make appropriation of percolating waters which were collected in the drainage ditches, and having yielded title to their lands to the drainage district to be held in trust, cannot claim any rights which are superior to those conveyed to the United States under the agreement with the drainage district.

The decree is affirmed.