**GRIFFITHS et al. v. COLE et al. (BLACK CANYON IRRIGATION DIST., Intervener).**

(District Court, D. Idaho, S. D. October 11, 1919.)

No. 648.

1. **Waters and water courses ⬿132—Water may be monopolized only for beneficial use.**

   Under the water statutes of Idaho, the right to the use of water can be acquired only for beneficial purposes, and one cannot maintain possession or withhold it from another unless he is actually using it or is ready to use it for a beneficial purpose.

2. **Waters and water courses ⬿142—Mere appropriation of water creates no obligation in landowners to use it for irrigation.**

   An inchoate appropriation of water for use in irrigating the land in an irrigation district places neither the district nor landowners under any

obligation to purchase from the appropriator; and they are free to contract with another.

3. **Waters and water courses** ⊚⇒222—Reclamation Service has right to water appropriated so long as applied to beneficial use.

Where water brought into a locality through government reclamation project canals and after percolation has been recovered by means of its drainage ditches, the Reclamation Service has the first right to conserve and use it even to provide irrigation to privately owned lands.

4. **Waters and water courses** ⊚⇒222—Reclamation Service may apply waters to use of lands outside project.

So long as the Reclamation Service can apply surplus water appropriated for a project to a beneficial use, although on lands outside the project, and thus lessen the cost to lands within the project, it is within the scope of its authority and may acquire rights of way under Act Aug. 30, 1890, c. 837.

In Equity. Suit by H. A. Griffiths and others against D. W. Cole and others; Black Canyon Irrigation District, intervener. Decree for defendants.

John J. Plowhead and Griffiths & Griffiths, all of Caldwell, Idaho, and J. B. Eldridge, of Boise, Idaho, for plaintiffs.

J. L. McClear, U. S. Atty., and B. E. Stoutemyer, both of Boise, Idaho, for defendants.

R. B. Scatterday, W. C. Bicknell, and J. M. Thompson, all of Caldwell, Idaho, for intervener.

DIETRICH, District Judge. The plaintiff Griffiths has on foot a plan for the irrigation of about 6,000 acres of land, known as the Black Canyon tract, situate on the north side of and near the Boise river, not far from the town of Notus. The water for this purpose is to be gotten from drainage canals constructed by the United States Reclamation Service, either for itself or in co-operation with the irrigation districts, in and along certain sloughs in the vicinity of Caldwell, on the south side of the Boise river. In furtherance of his purpose, he made application to the State Engineer on January 22, 1916, for a permit to appropriate 25 second feet of the water of Mason creek and 50 second feet of the water of Wilson slough, the permit being granted as of that date, with the statement that the water in question was "seepage water made available by drainage to the points of diversion"; and on March 9, 1918, he made an additional application for a permit to appropriate 25 second feet from Elijah slough and an equal amount from Indian creek, which application was approved as of that date. He also secured from the State Land Board a certificate authorizing him to sell water for the irrigation of the lands in question. He caused a line to be surveyed for the proposed canal, at small cost bought some used pipe for conveying the water across the river, advised landowners of his plans and of the terms upon which water rights would be sold, caused forms for bonds and contracts to be printed, and at one time secured conditional bids for the construction work. He has made no contracts, however, either for the sale of water or for constructing the system. Neither had he

acquired a right of way for any considerable distance at the time this suit was commenced, on November 26, 1918.

The defendants are alleged to be the officers and agents employed by the Reclamation Service, in charge of the Boise (formerly Payette-Boise) project. It is doubtful whether all of them were so employed when the suit was begun, but the question is not thought to be of controlling importance. The Boise project has been under construction quite continuously since 1906, and in so far as it relates to lands south of the Boise river was practically completed in 1917. The original plans contemplated also the irrigation of a large area on the north side of Boise river, including the Black Canyon tract, the water for that purpose to be gotten from the Payette river; but for reasons which the records do not make very clear, and which perhaps are not highly material, this part of the general plan seems to have been abandoned, and from time to time during the years from 1908 to 1912 the lands were released from the order of withdrawal and restored to the public domain. In the meantime, however, many of the lands here in question were entered and occupied by settlers in the expectation that the government would supply water for their irrigation; and, with the hope that either through the government or some other agency water would be made available, improvements were put upon the lands and title secured, so that when the suit was commenced there was less than 100 acres of the entire Black Canyon tract for which patent had not issued.

Apparently, as a consequence of the storage of water in Deer Flat reservoir, an important feature of the Boise project, and the distribution of water for irrigation purposes, and the attendant increase in the area of irrigated land, the ground-water levels began to rise rapidly a few years ago, and to avoid widespread damage to the lower lands it became imperatively necessary to provide drainage facilities. Certain irrigation districts owning the older irrigation systems were contributing to and threatened by the peril, and accordingly, in co-operation with them, the Reclamation Service constructed the drainage canals referred to, which, of course, followed the natural depressions of the land and the sloughs and high-water channels wherever practicable, and, while in the plaintiff's application for permits he designates certain sloughs and streams, the water he seeks to appropriate is chiefly drainage water gathered into artificial channels constructed therein. The right to construct and maintain these drainage conduits upon the lines adopted is not questioned, and admittedly the plaintiff has not secured the consent of the government or the irrigation districts to go upon them or place any obstruction therein or cut their banks, as of necessity he will be compelled to do if he diverts any water therefrom. There is a suggestion in the record that the Reclamation Service expressly waived such rights as the government may have had in the premises, and is now estopped from questioning the plaintiff's claim; but the contention is not sustained by the evidence. Shortly after the oral conference upon which plaintiff relies, he was formally advised that, though the government had not matured its plans for utilizing the water, he would not be permitted to take it.

On January 2, 1918, the Reclamation Service entered into a contract with the Black Canyon irrigation district, intervener herein, by which it was agreed, subject to the requisite appropriations being made by Congress, that it, the Reclamation Service, would, upon the terms and conditions stipulated, furnish water for the irrigation of the district lands; it being intended to use these drainage waters for the purpose. And subsequently surveys were made for a canal, and notices were sent out to the landowners across whose lands a right of way was claimed under the provisions of the Act of August 30, 1890 (26 Stat. 391), and in October, 1918, one of the defendants, acting upon behalf of the government, made application to the State Engineer for a permit to appropriate the water, but without relinquishing the claim that, by reason of the facts already explained, it had a superior right to the water—which application was granted as of October 19, 1918. In one section, along a steep hillside, the canal route adopted by the plaintiff and that selected by the Reclamation Service are either identical or partially overlap each other; the interference being due to the fact that at that point the conformation of the country is such that it is economically impracticable to construct two canals side by side upon the necessary grade to deliver the water at the point of intended use. It having become apparent that the reclamation officers intended to proceed with construction upon the right of way so selected, the plaintiff instituted this suit for injunctive relief. Some of the grounds upon which he relies are not clearly defined, but apparently he makes three principal contentions: First, that he has a superior, if not the exclusive, right to use the water in question. Second, that the defendants, by their conduct and threatened construction of the proposed works, will wrongfully prevent him from carrying out his plans. And, third, that the defendants have given out and threatened that they would occupy and construct their canal in part upon his right of way, to his great damage.

[1] As already announced from the bench, it is not thought that the suit can be maintained for the purpose of adjudicating the rights of the parties to the water. For present purposes, it will be assumed, though not decided, that the plaintiff has an incipient right to appropriate at least a part of the water flowing in the drainage channels, and that by complying with the statutes and the conditions of his permit he may complete and perfect such right. But admittedly neither claimant has as yet applied the water to a beneficial use or is ready to make such application, and no one can maintain the possession of water or withhold it from the possession or use of another unless he himself is actually using or is ready to use it for beneficial purposes. In Idaho one does not own water. He can acquire only the right to a use for beneficial purposes, and, whatever the dignity of his right, he can withhold possession from another only when and so long as he has need. Neither party here is interfering with or threatening in the immediate future to interfere with the other party's use, and in a sense the right of each is inchoate only, for neither as yet has the means by which the water may be conveyed to the place of intended use. To perfect the right there must be appli-

cation to beneficial use, and it is entirely possible that the one who now seems to have the better incipient right may abandon it entirely or may lose his position of superiority.

[2] Nor is it thought that there is any substantial ground for the plaintiff's second contention. If the Reclamation Service, acting through the defendants, is engaged in an enterprise not authorized by law, it is a matter of which the plaintiff cannot complain, unless in some way his property rights are infringed. As already stated, his use of the water is not being interfered with, for, whatever his potential rights, he cannot use the water now or in the immediate future. The defendants are not interfering with or encouraging the breach of any contracts which the landowners may have made with him, for he has no such contracts. To be sure, if the Black Canyon lands are supplied with water by the Reclamation Service, they will not be available for the plaintiffs' proposed system; but they have no vested right in the premises. The district and the landowners therein are at liberty to secure water from such sources as they may choose, or may decline to purchase water at all. They are not bound to give fruition to hopes or expectations on the part of the plaintiffs.

The other ground, and the only substantial ground, for equitable relief exhibited by the bill, is found in the charge that the defendants are interfering with and threatening to occupy the right of way selected by the plaintiffs for their canal. It was upon this ground that a temporary injunction was provisionally ordered. The seriousness of the issue is out of proportion to the inherent value of the land required for a right of way, for the reason, as already explained, that for a short distance along the steep hillside it is feasible to construct but one canal, and, the two projected systems having slightly different elevations, the construction of the one will practically exclude the other.

[3, 4] The first contention urged by the plaintiffs is that the Reclamation Service is without the power to engage in the proposed enterprise, and that therefore the defendants can neither occupy a right of way under the provisions of the act of August 30, 1890, supra, nor have the benefit of statutes in eminent domain. It must be admitted that the legal authority is not clear; but under the peculiar circumstances of the case it is thought the doubt, serious though it may be, should be resolved in favor of the Service. The water in question is to be carried through the proposed canal for the irrigation of lands now privately owned, it is true; but lands which were settled upon while they were still public, and improved in the expectation that the government would provide for their reclamation. While strictly speaking these lands cannot be regarded as a part of the Boise project, the water supply is one of the project's potential resources, developed at its expense, and of value to it if utilized. Whatever may ultimately turn out to be the plaintiffs' interest, admittedly the larger part of the water is brought into the locality through project canals, and after percolation is recovered by means of its drainage ditches, and clearly so long as it is conveying it in these ditches, with the intention upon its part of conserving it and applying it to a

beneficial use, it has the better right. One who diverts or develops water loses his superior right only when and so long as he is out of possession, or when he voluntarily abandons the water, or ceases to have a beneficial use for it. Apparently if this water cannot be delivered to the Black Canyon lands, an asset otherwise valuable to the project will be worthless, and the construction cost will be correspondingly increased for the project lands; and, upon the other hand, the plaintiffs or other third persons will be enabled to reap where they have not sown. Putting it in another way, the proposed disposition of the water is incidental to the construction and maintenance of the Boise project, and therefore the proposed canal is within the scope of the authority conferred by law, and for it the government may occupy rights of way under the act of August 30, 1890, or exappropriate them by suitable condemnation proceedings.

To avoid misunderstanding, perhaps it should be added that no importance is attached to the action of the Reclamation Service in attempting to include these privately owned Black Canyon lands in a new project embracing a large body of public lands lying further north, withdrawn from entry, ostensibly for reclamation, by an order made April 13, 1919, after the suit was commenced and shortly before the trial thereof. These public lands are entirely separate from the lands under consideration, and lie above the proposed canal, and their reclamation has no substantial relation to the enterprise in suit; nor, so far as appears, is there any definite plan or appropriation for their reclamation, nor has it been finally or absolutely decided to undertake such reclamation. The irrigation of the private lands is therefore not an incident of the reclamation of these public lands, but is in reality a distinct enterprise, having no direct or substantial relation thereto. In United States v. Burley (C. C.) 172 Fed. 815, Burley v. U. S., 179 Fed. 1, 102 C. C. A. 459, 33 L. R. A. (N. S.) 807, emphasis was placed upon the fact that the reclamation of its own public lands was the primary or dominant purpose of the government, and that was thought to be a necessary prerequisite to the right of the government to condemn land for a reservoir site. Whatever may be its maximum power under the Constitution, as then, so now, it is thought that by the Reclamation Act (32 Stat. 388 [Comp. St. §§ 4700–4708]) Congress has chosen to confer authority upon the Secretary of the Interior only to undertake projects the primary or predominant purpose of which is to reclaim public lands.

The evidence touching the interest the plaintiffs have in the right of way in controversy is of a most unsatisfactory character. In the case of the Allison and Wright tracts, it conclusively appears that they had no vested right when the reclamation officials, proceeding under the authority of the act of August 30, 1890, adopted their line and took possession of the necessary right of way. Both the written options or contracts and the deeds exhibited at the trial, though bearing earlier dates, were admittedly executed after the suit was commenced, and but a short time before the trial. The vague oral understanding the plaintiff Griffiths testified he had theretofore

had with the owners was binding upon no one, and was ineffective as against definite selection and actual occupation by the government. The Walter Griffiths deed also was antedated for the purposes of the trial, and likewise the deed relating to the so-called "Young" tract. The contracts in these two cases were probably given before the suit was commenced, but the descriptions are materially defective. The Griffiths tract was patented subsequently to the act of August 30, 1890, and is subject to its provisions. It may be that the actual use for a private irrigation ditch of a right of way in a tract thus patented operates to exempt it from appropriation for a like purpose by the government, but to effect such exemption there must be a clear and unconditional dedication. The contract here is in the nature of an option only, the description of the right of way is of a most general character, wholly incapable of definite location upon the ground, and if we assume that the plaintiff Griffiths, in whose favor the instrument purports to run, was otherwise in a position to acquire a right to use the water under consideration, he is not shown to have any use to which he can apply the water. The only possible user has already contracted with the government and is disinclined to deal with him.

The Young tract was patented prior to the passage of the act of August 30, 1890, and accordingly presents a different aspect; but admittedly there is a wide discrepancy between the description in the contract and the right of way which the plaintiffs now seek to hold. And, besides, the defendants disclaim any intention to so construct the government canal as to prevent the reasonable use of the plaintiffs' last survey. The defendants' engineer testified that by building a concrete conduit and by depositing the waste upon the uphill side, as is their intention, serious conflict will be avoided.

Possibly before formulating the order of condemnation in the eminent domain case, it will be necessary to submit a little additional evidence upon the precise relation of the center lines of the two proposed ditches, their elevations, their widths, slope of banks, etc. At least, there will have to be an interpretation of the maps and technical data already in the record. To that end the cases will be held open for further hearing, to be had Monday, October 27th, at 10 o'clock a. m., at which time one engineer upon each side may testify with the view of giving me the desired data; or it will be satisfactory if, by agreement of counsel, the data can be furnished in some less formal way.