## UNITED STATES v. IDE et al.

(Circuit Court of Appeals, Eighth Circuit. December 7, 1921.)

No. 5704.

**1. Waters and water courses ⟨⟩38—Facts held to show wash was not a natural stream.**

The fact that, before irrigation of lands under a government reclamation project commenced, a wash or channel within the lands covered by the project carried water only as the run-off from rain or melting snow, and was generally dry during all the irrigating season, except the first 10 days, showed that the wash was not a natural stream, within Const. Wyo. art. 8, § 1, declaring the water of such streams to be the property of the state.

**2. Waters and water courses ⟨⟩38—Natural stream should have permanent flow.**

No definition of a natural stream or water course can be given that will apply to all cases, but the law requires, speaking generally, that a natural stream have a channel, boundary, permanent source of supply, and a permanent flow, and even if a water course in an arid region can be claimed as a natural stream, though it would not be in another region, a dry run or wash, which was worthless as a stream from which adjacent lands can be irrigated, cannot be classed as a natural stream.

**3. Waters and water courses ⟨⟩38—State water permit does not make wash a natural stream.**

That the state issued a permit for the appropriation of water from a water course does not make that water course a natural stream, if in fact it was not.

**4. Waters and water courses ⟨⟩222—Reservation of right of way applies to future ditches.**

Act Aug. 30, 1890 (Comp. St. § 4933), reserving from patents to public lands thereafter issued a right of way for ditches and canals constructed by the authority of the United States, did not limit the reserved right to ditches constructed when the patent was issued, but authorized a reservation in the patent for ditches thereafter to be constructed.

**5. Waters and water courses ⟨⟩222—Patentee from state cannot object to reserved reclamation of right of way.**

A patentee of lands from the state, who knowingly took his patent subject to a reservation, pursuant to Comp. St. Wyo. 1920, § 4954, of a right of way for ditches constructed by the United States, cannot contend as against the United States that the statute authorizing the reservation only applied to land while owned by the state.

**6. Waters and water courses ⟨⟩222—Government liable for negligence in constructing ditches under reserved right of way.**

The right of way reserved in a patent to lands for ditches constructed under the authority of the United States authorizes the construction of such ditches only in the exercise of due care, and the landowner can recover any damages resulting from negligent construction.

**7. Waters and water courses ⟨⟩222—Drainage may be part of reclamation system.**

The United States may construct drainage works as a part of its irrigation system for a reclamation project.

**8. Waters and water courses ⟨⟩222—Necessity for drainage and method are within discretion of Secretary of the Interior.**

Necessity for drainage in connection with a reclamation project and the method of conducting the work are in the sound discretion of the

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Secretary of Interior, and his discretion cannot be reviewed by the courts.

9. **Waters and water courses** ⬦⟹222—**Seepage and waste from reclamation project may be saved by United States, unless abandoned.**

The United States can save and continue to use the drainage seepage and waste waters from its reclamation project, even after such waters had been allowed to escape, so long as they could be identified and had not been abandoned.

10. **Waters and water courses** ⬦⟹222—**Abandoned waste water can be reclaimed, without prejudice to third party.**

Even if waste water from a government reclamation project had once been abandoned, the government could thereafter reclaim such water and apply it to beneficial use, if no right of third parties had intervened.

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Suit by the United States against Arthur W. Ide and others to enjoin interference with the construction of a ditch, in which Christopher Althoff and others were allowed to intervene as parties defendant. From a decree dismissing the complaint, awarding damages to defendants, and enjoining the United States from interfering with defendants' appropriation and use of certain waters, the United States appeals. Reversed and remanded, with direction to enter a decree for the United States.

This is an action commenced July 3, 1918, by the appellant against appellees for the purpose of enjoining them from interfering with the construction of a ditch in connection with appellant's Shoshone reclamation project, located in the state of Wyoming. The parties hereafter will be referred to as they were in the trial court. The original defendants were Arthur W. Ide, Charles Grant Caldwell, and H. B. Loomis. On motion Christopher Althoff, Arthur R. Thornberg, Earl Kysar, D. E. Townsley, and Agnes H. Caldwell were allowed to intervene as parties defendant. The defendants filed separate answers to the complaint of the plaintiff, and by way of counterclaim prayed that the plaintiff be enjoined from constructing the ditch above mentioned, and from performing any acts that would injure defendants' lands and water rights located along said proposed ditch. Judgment for damages for trespasses already committed was also asked. On final hearing upon pleadings and proofs the trial court granted the defendants damages in the aggregate sum of $3,150, dismissed plaintiff's complaint, and enjoined plaintiff and its officers, agents, employees, and representatives from interfering in any way with defendants' appropriation and use of the waters of Bitter creek, so called, for the purpose of irrigating their lands, and from constructing or maintaining any ditches or other works which would destroy or interfere with the maintenance and use by defendants of diversion drains, ditches, and other means of conveying water from Bitter creek to defendants' lands for irrigation purposes. It was further adjudged and decreed that if the plaintiff should, within 30 days from the date of the decree, file in the cause its election to furnish each of the defendants, other than A. W. Ide, a perpetual water right for the irrigation of their lands, and at the same time file a proper instrument in writing conveying without cost to each of said defendants, other than defendant A. W. Ide, perpetual water rights for the irrigation of their respective holdings of land in an amount equal to their respective appropriations of water from Bitter creek as evidenced by their water permits granted by the state of Wyoming, then the defendants should be enjoined from interfering with the plaintiff's construction of said ditch and the diversion and use of water therefrom. The plaintiff filed no election within the time allowed there-

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for, and a decree was entered as above stated. From this decree plaintiff appealed.

A proper understanding of the case requires a statement, as brief as may be, of the facts as they appear from the record. Plaintiff on the 17th day of June (date of the approval of the Reclamation Act, 32 Stat. 388 [Comp. St. §§ 4700–4708]), was the owner of 1,000,000 acres of land situated in Big Horn county, Wyo.; a part of said county now being embraced in the county of Park. Through these lands flowed the Shoshone river. On and before the date aforesaid these lands were vacant lands, arid in character, and incapable of producing agricultural crops without artificial irrigation. The only source from which water could be obtained to irrigate these lands was the above-named river, the natural flow of which during the crop-growing season varied from a few hundred second feet to several thousand second feet in time of flood. April 21, 1903, March 11, 1904, and April 15, 1904, the Secretary of the Interior, under the authority of the Reclamation Act, above mentioned, withdrew from all forms of entry and sale, except under the homestead laws the public lands in said county of Big Horn. On February 10, 1904, said Secretary, acting under the authority of the same act, authorized and immediately began the carrying out of a reclamation project to be known as the Shoshone project, and which should embrace the lands so withdrawn from entry. The work upon the construction of said project has continued from the date last mentioned till the present time.

A sum in excess of $5,328,000 has so far been expended in the construction of reservoirs, dams, ditches, laterals, and in necessary surveys, and it is estimated that an expenditure of $5,000,000 will be required to complete said project. The principal engineering features of said reclamation project thus far constructed consist of the Shoshone storage reservoir situated in the county of Park above mentioned, with a storage capacity of 456,000 acre feet, completed at an expenditure of $1,364,000. The storage water coming from the Shoshone river into said reservoir is carried down said river as a carrying channel, and diverted at or near Corbett, in said county of Park, and will be diverted at other points along the river. The diversion dam at Corbett is a substantial concrete structure across the Shoshone river, constructed at an expenditure of $97,000. Its purpose is to divert water into the Corbett tunnel, and thence into the Garland Canal. The tunnel diverts about 1,000 cubic feet of water per second of time from the Shoshone river. The canal is 50 miles in length, has 286 miles of lateral ditches, and a capacity of irrigating 82,000 acres of land on the north side of the Shoshone river. Water was applied to the irrigation of the lands of the project in the summer of 1908, and has been applied to more and more lands, until at the commencement of this litigation 55,380 acres of lands under the Garland Canal were being irrigated. The total amount of land which will be irrigated when the project is completed will be 150,000 acres.

In 1899, there was segregated to the state of Wyoming by plaintiff, under the provisions of Act Aug. 18, 1894 (28 Stat. 422 [Comp. St. § 4685]), known as the "Carey Act," a tract of land of about 60,000 acres. This segregation was approved by the Interior Department June 9, 1901. May 22, 1899, the state engineer of Wyoming issued a permit to Cody and Salisbury for the diverting of water from the Shoshone river in an amount sufficient to irrigate this tract of 60,000 acres of arid land, with a limitation of one cubic foot per second of time for each 70 acres of land reclaimed. January 26, 1903, the Governor of Wyoming requested the plaintiff to take a relinquishment from the state of said tract of segregated land and an assignment of said water permit, so that plaintiff could irrigate and reclaim said land. The plaintiff accepted a transfer of said land and an assignment of the water permit. The tract of 60,000 acres so segregated by plaintiff to the state of Wyoming, and received back as above stated, embraced and included the lands of defendants.

March 5, 1904, plaintiff filed in the office of the state engineer of Wyoming an application in due form for a permit in conformity to the laws of said state for the construction of the Shoshone reservoir, which application was

duly granted. March 28, 1904, plaintiff filed in the same office an application in due form for a permit in conformity with the laws of said state to construct the Garland Canal, which application was duly allowed. On January 3, 1910, plaintiff filed in conformity with the laws of said state an application for a permit in due form for the construction and operation, among others of the Garland Canal and distribution system, and a notice of the withdrawal, reservation, and utilization by the plaintiff of its surplus and unappropriated waters for the reclamation purposes of the Shoshone project. This application was duly allowed by the proper officials of the state of Wyoming with a priority dating back to May 22, 1899, the date of the permit to Cody and Salisbury. The various permits granted by the state of Wyoming to the plaintiff cover the lands of defendants here in controversy.

Prior to the year 1908, plaintiff constructed as a part of its said project the Garland Canal and several laterals above and around the Garland division of the Shoshone project. Beginning with the year 1908, the water of the plaintiff was run through the Garland Canal and the laterals around and above said area, and the lands therein were supplied with water for irrigation. Immediately upon the carrying of water into plaintiff's Garland Canal around and above the drainage line called Bitter creek, and the application of irrigation water from said canal and laterals to the lands situated in the vicinity thereof, waste, return, percolating, and seep water began to appear in portions of said Bitter creek to such an extent that an increasing and continuous stream was created. Adjacent areas of land in the vicinity became saturated and required drainage in order to retain their productivity and to secure the highest agricultural returns.

Beginning in the year of 1910, in furtherance of said project and for carrying out the express purposes thereof, and in contemplation of the condition heretofore described, and to develop and collect water on said project and to drain waterlogged land, and to utilize said waste, percolated, and seepage water, and in accordance with notices theretofore given as above stated, plaintiff found it necessary to construct in the vicinity of Bitter creek a large and deep drainage ditch for developing and collecting waste, percolating, and seepage waters resulting from the irrigation with plaintiff's water of lands under said project. The natural lines of drainage for said project included and involved the use of Bitter creek as a drainage line, and the plans of the proposed drainage system contemplated such use. Construction work was begun and continued, with Bitter creek as a main trunk drain, and the plans for construction of drains and the actual construction thereof have not been changed or interrupted, except by state officials of Wyoming acting at the instance of defendants.

Since 1910 the plaintiff has constructed additional drains for the reclamation of seeped lands, and to utilize the waste and drainage water for the irrigation and reclamation of the lands of the project, and to put said drainage waters to beneficial use. By the construction of additional drains the amount of water in Bitter creek has increased, and at the commencement of this litigation more than 22 second feet of water was being applied to beneficial use. Plaintiff plans to divert and use, to irrigate the project lands, about 110 second feet at the time of final drainage development.

Defendant Ide owns a homestead, consisting of lot 41 in township 56, range 98, through which Bitter creek flows. The other defendants are owners of separate portions of section 36 or lot 37, in township 56, range 99, through the south half of which Bitter creek also flows. This section was purchased from the state of Wyoming in 1910. Eighty acres of it, belonging to defendant Charles Grant Caldwell, is and since 1911 has been irrigated with water taken from Bitter creek through Caldwell Ditches No. 1 and No. 2, by virtue of appropriation permits from the state of Wyoming, dated October 6, 1910. Approximately all of the remainder of this section is irrigated with water from the same source, taken through enlargements of said ditches by virtue of permits from the state of Wyoming dated April 22, 1915. Defendant Charles Grant Caldwell also owns a homestead of 80 acres, consisting of the east half

of the southeast quarter of section 38, township 59, range 99, through which Bitter creek flows, and which is irrigated with water purchased from the government reclamation project.

Pursuant to the drainage plans of plaintiff as above stated, it was found necessary to deepen Bitter creek, and in doing so plaintiff committed the trespass and caused the injuries which defendants claim they have suffered. The homesteads of Ide and Caldwell were patented under Act June 17, 1902 (Reclamation Act, 32 Stat. 388), and Act Aug. 30, 1890 (26 Stat. 391 [Comp. St. § 4933). The last-named act contains the following proviso: "That in all patents for lands hereafter taken up under any of the land laws of the United States or on entries or claims validated by this act west of the one hundredth meridian, it shall be expressed that there is reserved from the lands in said patent described, a right of way thereon for ditches or canals constructed by the authority of the United States."

The act of the Legislature of Wyoming approved February 21, 1905 (C. S. Wyo. 1910, § 3890), provides: "There is hereby granted over all the lands now owned by the state of Wyoming, which may hereafter be owned by the state of Wyoming, a right of way for ditches, tunnels, telephone and transmission lines constructed by and under the authority of the United States; Provided, * * * That all conveyances by the state of any of its lands, which may hereafter be made, shall contain a reservation for rights of way provided for in this act."

The homestead patents to Ide and Caldwell contained this reservation: "But excepting, nevertheless, and reserving unto the United States, rights of way over, across, and through said lands for canals and ditches constructed, or to be constructed by its authority, all in the manner prescribed and directed by the act of Congress approved August 30, 1890 (26 Stat. 391)."

The patents of the state of Wyoming, conveying section 36, supra, contained this exception: "Subject to all legally established or granted rights of way under the laws of the state of Wyoming or reserved to the United States."

The length of the irrigation season in the locality in question is 180 days, extending from April 20th to October 20th. In regard to whether or not the depression in the earth's surface, called in the record Bitter creek wash, dry wash, drainage line, and Bitter creek, is a natural stream, there was much testimony introduced by both parties. Such testimony has been carefully read and considered, and we are of the opinion that, giving to the testimony of the defendants' witnesses all that can be claimed for it, the following facts are established without material dispute:

What is called Bitter creek, when viewed separate and apart from the waters which are now flowing in it, from the reclamation project of the plaintiff, has no natural source of water supply other than rainfall or melting snow. The water from the territory which drains into Bitter creek from rain and melting snow does so during the months of March and April of each year, and that subsequently to the 1st of May no water is found in Bitter creek, other than produced by the Shoshone project. The water from rain and melting snow varies from year to year proportionally to the amount of rainfall including snow. The official records of this rainfall, including snow, kept by the agents and officers of the plaintiff at Powell, in the vicinity of the watershed to Bitter creek, shows that the rainfall, including snow, averages less than 6 inches per year. The same records show for the watershed an evaporation of 30 inches during the irrigation season. The drainage basin contains only 33 square miles.

Prior to the construction of the Shoshone project, although there were settlers in the vicinity of Bitter creek, near the town of Byron, as early as 1900, there is no evidence that any one ever applied during that time to the state of Wyoming for a water permit on Bitter creek, although land along the so-called creek is admittedly, according to all the testimony, worthless without water, but with water is worth $250 per acre. The water rights under which defendants, or some of them, claim were granted in 1910 or subsequent thereto. From 1900 until 1908 there was no grass, bushes, or trees,

such as grow along natural streams in Wyoming, growing along the banks of this alleged creek above Garland. All the engineers engaged on the reclamation project testified that from their own observation there was no natural flow or source of water in Bitter creek, except from rainfall or melting snow and that this was of short duration.

Byron Sessions, a witness for the plaintiff, testified: "When you talk about water in that draw, it is all nonsense." The witness Caldwell, whom the trial court mentions, was directly interested as a party defendant, and his testimony does not conflict with what we have stated.

Ethelbert Ward, Sp. Asst. Atty. Gen., and Albert D. Walton, U. S. Atty., of Cheyenne, Wyo. (Willis J. Egleston, Dist. Counsel, U. S. Reclamation Service, of Helena, Mont., and Clyde M. Watts, Asst. U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Avery Haggard, of Cheyenne, Wyo. (William B. Ross, of Cheyenne, Wyo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

CARLAND, Circuit Judge (after stating the facts as above). The attempt of the plaintiff to deepen what is called in the evidence Bitter creek, in accordance with its plans for draining the Garland division of its Shoshone project, together with the attempts of the defendants to make worthless lands worth $250 per acre at the expense of the plaintiff, are the chief causes of this litigation. The Reclamation Act provides that all proceedings thereunder on the part of the plaintiff shall be in accordance with the laws of the state in which the proceedings are had, and so far as we have been able to learn from the record the plaintiff has complied with the laws of Wyoming in the construction of its reclamation project, including reservoirs, diversion dams, canals, and laterals. We are of the opinion that, in the consideration of a case such as the one before us, a broad view of the situation is necessary, in order to carry out, if lawfully permissible, the great object which the plaintiff had in view in enacting legislation which permits it, with its great resources, to reclaim arid and semiarid lands for cultivation. It is a work that could not be done, or at least would not be done, by private effort.

On the face of the record it would seem that the defendants, whose lands have been increased in value from nothing to $250 per acre by the construction of the Shoshone project, were willing to receive this benefit without contributing anything therefor. They claim, however, that they are acting clearly within their legal rights. If so, they must prevail as against the claims of the plaintiff. There are two large questions to be considered in the determination of the rights of the parties:

(1) Is or was Bitter creek ever a natural stream within the meaning of those words as used in article 8, § 1, Constitution of Wyoming, which reads:

"The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state."

(2) Had the United States a right of way through or across the lands of defendants to construct a ditch as a part of its drainage system in the Garland division of its Shoshone project, for the purpose of draining seeped lands, collecting waste and percolating water arising from its project, and diverting the same for beneficial use in connection with its reclamation project?

[1] Upon the first proposition we are of the opinion that the evidence falls far short of showing Bitter creek ever to have been a natural stream. No one, prior to the time that water first commenced to run in the creek as the result of the construction of the Shoshone project, ever applied for a permit to use any of the water of the creek, and there is no substantial conflict in the testimony to the effect that there was no water in the creek after the 1st of May, and that the irrigation season did not commence until April 20th of each year. The substance of what the evidence shows has been set forth in the statement of facts, and we are of the opinion that it would be a clear mistake, in considering the evidence, to hold that Bitter creek is or ever was a natural stream. The trial court found that it was a natural stream. We think the presumption attending such finding is clearly overthrown by the evidence, and we must hold that there was a serious mistake made in the consideration of the evidence by the trial court upon this point. We have examined the authorities cited by counsel for defendants upon the question at issue, and we are unable to find an authority which under the facts as they appear in the record holds such a stream as Bitter creek is shown to be is a natural stream.

[2] It is claimed that the question of whether Bitter creek is a stream or not must be judged with reference to the country or locality in which it is found, and that there are natural streams in arid countries that would not be called such in a country not arid. But certainly any such distinction should not be carried so far as to make a natural stream out of a dry run or wash. In determining whether a natural stream exists or not, it is permissible to inquire whether the alleged stream flows for such a length of time that its existence will furnish the advantages usually attendant on streams of water. Chicago, etc., R. Co. v. Groves, 20 Okl. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802; Simmons v. Winters, 21 Or. 35, 27 Pac. 7, 28 Am. St. Rep. 727. The stream in question, when subjected to this test, wholly fails. It certainly was worthless as a stream from which adjacent lands could be irrigated. It is believed that no definition of a natural stream or water course can be given that will apply to all cases, as each case has its own facts which must influence the judgment of the court. Speaking generally, it seems to be the law that a natural stream must have a channel, boundary, permanent source of supply, and a permanent flow. R. C. L. vol. 27, pp. 1063, 1065, 1066; 40 Cyc. 554, 555, 556; 29 Cyc. 283; Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 519; Pyle v. Richards, 17 Neb. 180; 22 N. W. 370; 27 Am. & Eng. Encl. of Law, 1; Sanquinetti v. Pock, 136 Cal. 466, 69 Pac. 98, 89 Am. St. Rep. 169; Hutchinson v. Watson Slough Ditch Co., 16 Idaho, 484, 101 Pac. 1095, 133 Am. St. Rep. 125; Rait v. Furrow, 74 Kan. 101, 85 Pac.

934, 6 L. R. A. (N. S.) 157, 10 Ann. Cas. 1044; Thorpe et ux v. City of Spokane, 78 Wash. 488, 139 Pac. 221; C., R. I. & P. v. Morton, 57 Okl. 711, 157 Pac. 917; Town of Jefferson v. Hicks, 23 Okl. 684, 102 Pac. 79, 24 L. R. A. (N. S.) 214; Gibbs v. Williams, 25 Kan. 214, 37 Am. Rep. 241; Swett v. Cutts, 50 N. H. 439, 9 Am. Rep. 276; Ashley v. Wolcott, 11 Cush. 192; Hoyt v. City of Hudson, 27 Wis. 664, 9 Am. Rep. 473; Ang. Water Courses (5th Ed.) § 4; Barnes v. Sabron, 10 Nev. 218; 1 Kinney on Irrigation (2d Ed.) pp. 495, 496, 498, 499. We find nothing to the contrary in Simons v. Winters, 21 Or. 35, 27 Pac. 7, 28 Am. St. Rep. 727, Lindblom v. Round Valley Water Co., 178 Cal. 450, 173 Pac. 994, and Oregon-Washington R. & Nav. Co. v. Royer, 255 Fed. 881, 167 C. C. A. 201, because the facts in those cases are different from those in the case at bar. We therefore decide that Bitter creek is not a natural stream.

[3] The state of Wyoming could not make the creek a natural stream by issuing a permit to take water therefrom. Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258–269, 50 L. R. A. 747, 87 Am. St. Rep. 918; Ryan v. Tutty, 13 Wyo. 122, 78 Pac. 661; U. S. v. Rams horn Ditch Co. (D. C.) 254 Fed. 842; Id. (C. C. A.) 269 Fed. 80; Wattson v. U. S., 260 Fed. 506, 171 C. C. A. 308; Hagerman Irr. Dist. v. East Grand Plains Drainage Dist., 25 N. M. 649, 187 Pac. 555; Vanderwork v. Hewes, 15 N. M. 439, 110 Pac. 567; Basinger v. Taylor, 30 Idaho, 289, 164 Pac. 522.

Coming, now, to the question as to whether the plaintiff had a right of way over and through the lands of defendants for the purpose of constructing a ditch, in order to carry out its drainage plan and the collection and diversion of its waste, seepage, and percolating water escaping from its Shoshone project, we are of the opinion that the reservations in the patents from the United States and in the conveyances executed by the state of Wyoming to the defendants for lands in section 36, supra, were valid reservations of a right of way for the purpose mentioned and that the plaintiff was not a trespasser in entering upon defendants' lands for the purpose of deepening Bitter creek. The act of Congress of August 30, 1890, and the act of the Legislature of Wyoming approved February 21, 1905, so far as material, are set forth in the statement of facts; also the reservations in the patents and deeds of conveyance. We are satisfied that the legislation on the part of Congress and the state of Wyoming was enacted in order to assist the plaintiff in carrying out the Reclamation Act, although the latter act was passed after August 30, 1890. The Legislatures of other states having arid lands passed acts similar to the one passed by the state of Wyoming. Such statutes were enacted in 1905 in Idaho, Montana, Nebraska, Nevada, Oregon, Utah, Washington, and in 1907 by California, New Mexico, and South Dakota, and in 1909 by Colorado.

[4] Counsel for defendant calls attention to the fact that the act of Congress of August 30, 1890, supra, reserves a right of way for ditches and canals "constructed" by the authority of the United States, while the reservation in the homestead patents contains the additional words "or to be constructed," and the claim is made that the reserva-

tions in the patents are broader than the statute, and that no authority can be found in the statute for reserving a right of way for canals and ditches "to be constructed" by authority of the United States. Such a construction of the statute would make the reservation therein apply only to ditches that had already been constructed. We do not think that such an absurd result was ever intended by Congress, but that the reservations in the patents were in accordance with the evident intention of Congress, and that, such interpretation being given by the department of the government having charge of the execution of the statute, great weight must be given to it. We think the statute as well as the patents referred to ditches "to be constructed" in the future. The statute in question has been construed by the courts in the following cases: Green v. Willhite (C. C.) 160 Fed. 755 (1906); Green v. Willhite, 14 Idaho, 238, 93 Pac. 971 (1908); U. S. v. Van Horn (D. C.) 197 Fed. 611 (Colo. 1912). In those cases the courts have placed the same construction upon the statute as we have indicated. In Green v. Willhite, 14 Idaho, 238, 93 Pac. 971, a detailed history of the act and the discussions in Congress relative to its purpose and interpretation are given. It appears clearly from said history, as stated by the Supreme Court of Idaho, that the members of Congress, both those favoring and those opposing the act, believed and understood that it would have the effect of reserving a perpetual easement and right of way to the government for ditches and canals that might thereafter be constructed by authority of the government over lands that should be entered and patented subsequent to the passage of the act. We have no doubt that the reservation in the homestead patents contained the proper interpretation of the act of Congress of August 30, 1890.

[5] It is further contended by counsel for defendants that there is no justification in the language of the statute enacted by the Legislature of Wyoming for the purpose of reserving a right of way for ditches, tunnels, telephone, and transmission lines constructed by and under the authority of the United States for extending said right of easement to lands not owned by the state. We do not think it is open to the defendants, who purchased their lands from the state of Wyoing and received and accepted the deed of conveyance containing the reservation heretofore mentioned, to now complain as against the plaintiff that the reservation is void. The reservation and the deed of conveyance was made pursuant to the last proviso of section 4954, C. S. Wyo. 1920, heretofore quoted, and became operative at the time the deed was executed and delivered. The defendants took their title subject to this burden and with full knowledge thereof. No injustice results, for the reason that the lands purchased by defendants were admittedly worthless without irrigation, and they were not purchased until the plaintiff had proceeded far enough with its Shoshone project so as to show that these lands would be irrigated thereunder.

[6] Counsel for defendants complains of the great injustice done the defendants by the manner in which Bitter creek was deepened across defendants' lands. We have no intention of deciding that the plain-

tiff could go on the lands of defendants and in a reckless and careless way construct a ditch that would unnecessarily damage the lands of defendants, and the decision in this case will be without prejudice to the right of the defendants, or any of them, to recover from the plaintiff any damages resulting from the want of ordinary care in constructing the ditch or the deepening of Bitter creek. We think the plaintiff was fully authorized, by the statutes that have been mentioned and the reservations in the patents and deeds of conveyance, to construct a ditch across defendants' lands using ordinary care.

[7, 8] It is well settled that the plaintiff may construct drainage works as a part of its irrigation system. Bissett v. Pioneer Irr. Dist., 21 Idaho, 98, 120 Pac. 461; Pioneer Irr. Dist. v. Stone, 23 Idaho, 344, 130 Pac. 382; Nampa & Meridian Dist. v. Petrie, 28 Idaho, 227, 153 Pac. 425; G. G. Burt et al. Drainage Dist. v. Farmer's Co-operative Co., 30 Idaho, 752, 168 Pac. 1078. The necessity for drainage and the methods of conducting the work are, in our opinion, in the sound discretion of the Secretary of the Interior, and such discretion cannot be reviewed by the courts. Ness v. Fisher, 223 U. S. 691, 32 Sup. Ct. 356, 56 L. Ed. 610; Knight v. U. S. Land Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; Noble v. Union River Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123 (1893); U. S. v. Minidoka & W. R. Co., 190 Fed. 491, 111 C. C. A. 323 (1911); Stalker v. O. S. L. Ry. Co., 225 U. S. 142, 32 Sup. Ct. 636, 56 L. Ed. 1027 (1912); U. S. v. O'Neill (D. C.) 198 Fed. 680; U. S. v. Burley (C. C.) 172 Fed. 617; State ex rel. Megler v. Forrest, Commissioner of Public Lands, 13 Wash. 268, 43 Pac. 51 (1895); U. S. v. Doherty (D. C.) 27 Fed. 730; U. S. v. Schurz, 102 U. S. 375, 26 L. Ed. 167; Cosmos Exploration Co. v. Gray Eagle Co., 190 U. S. 301, 23 Sup. Ct. 692, 47 L. Ed. 1064; Riverside Oil Co. v. Hitchcock, 190 U. S. 317, 23 Sup. Ct. 698, 47 L. Ed. 1074; U. S. v. Speed, 8 Wall. 77, 83, 19 L. Ed. 449; Earnshaw v. U. S., 146 U. S. 60, 13 Sup. Ct. 14, 36 L. Ed. 887; Bates v. Payne, 194 U. S. 107, 24 Sup. Ct. 595, 48 L. Ed. 894.

[9] The right of the plaintiff to save and continue to use the drainage, seepage, and waste waters of its project is established by the following cases: Ramshorn Ditch Co. v. U. S. (C. C. A.) 269 Fed. 80, 83 (8th Cir. 1920); Griffiths v. Cole (D. C.) 264 Fed. 369, 372 (Idaho, 1919); McKelvey v. North Sterling Irr. Dist., 66 Colo. 11, 179 Pac. 872, 874 (1919); Hagerman Irr. Co. v. East Grand Plains Drainage Dist., 25 N. M. 649, 187 Pac. 555, 557, 558 (1920); Lambeye v. Garcia, 18 Ariz. 178, 157 Pac. 977, 979, 980 (1916); United States v. Oliver O. Haga et ux. (D. C.) 276 Fed. 41 (August 10, 1921).

The permits granted by the state of Wyoming to the defendants could not authorize the defendants to take the waters of the plaintiff, and, as Bitter creek was not a natural stream, said permits gave no authority to take water from Bitter creek. No one ever applied for such permits until the plaintiff had at a great expense brought water from the Shoshone reservoir to the vicinity of the lands in question, and it is fair to presume that no permits would have been asked for, if the irrigation project had not been developed by the plaintiff. The law is clear, in our opinion, that the plaintiff had the right to save and

continue to use the drainage, seepage, and waste waters of its project as long as such water could be identified and had not been abandoned.

[10] So far as abandonment is concerned, it was neither pleaded nor proven by the defendants. There may have been some of the plaintiff's water which during the construction of the Shoshone project may have flowed into the Shoshone river, but the acts and declarations of the plaintiff show that as soon as it could reasonably do so it commenced to construct ditches and diversion works to save and divert drainage, seepage, and waste water arising from its project, for the purpose of applying it to the beneficial use of irrigating lands in the Garland division. The evidence shows that at all times plaintiff had in mind the saving of its waste water. Even if it had been shown that the plaintiff had abandoned some of this waste water, it would not preclude it from subsequently attempting to save it for beneficial use, where the rights of third parties had not intervened, and the defendants are no such parties, as they have no lawful right to take water from Bitter creek, except under the terms of the Reclamation Act. In U. S. v. Haga, supra, Dietrich, District Judge, used the following language in regard to the question now under consideration:

"In point of law the general principle upon which the plaintiff relies is scarcely open to controversy; one who by the expenditure of money and labor diverts appropriable water from a stream, and thus makes it available for fruitful purposes, it entitled to its exclusive control so long as he is able and willing to apply it to beneficial uses, and such right extends to what is commonly known as wastage from surface run-off and deep percolation, necessarily incident to practical irrigation. Considerations of both public policy and natural justice strongly support such a rule. Nor is it essential to his control that the appropriator maintain continuous actual possession of such water. So long as he does not abandon it, or forfeit it by failure to use, he may assert his rights. It is not necessary that he confine it upon his own land or convey it in an artificial conduit. It is requisite, of course, that he be able to identify it; but, subject to that limitation, he may conduct it through natural channels, and may even commingle it or suffer it to commingle with other waters. In short, the rights of an appropriator in these respects are not affected by the fact that the water has once been used. U. S. v. Ramshorn Ditch Co. (D. C.) 254 Fed. 842; Ramshorn Ditch Co. v. U. S. (C. C. A.) 269 Fed. 80; McKelvey v. North Sterling Irr. Dist., 66 Colo. 11, 179 Pac. 872; Lambeye v. Garcia, 18 Ariz. 178, 157 Pac. 977; Hagerman Irr. Co. v. East Grand Plains D. D., 25 N. M. 649, 187 Pac. 555; Griffith v. Cole et al. (D. C.) 264 Fed. 369; Twin Falls Canal Co. v. Damman (this court, No. 689) oral decision rendered September 19, 1919, filed August 20, 1920.

"An application of the general rule, as discussed, to the undisputed facts leaves no room for doubt of the right of the plaintiff to follow the wastage from this storage water so far as it can be identified. Clearly, it has never intended to relinquish such rights, nor is there any ground upon which to rest a finding of forfeiture. The reservoir was not completed and put into service until 1915, and at that time the plaintiff's distributing system was so constructed and it had done such work on the channel of the creek as to enable it to pick the water up and send it on for use on project lands in the Nampa & Meridian irrigation district. In any possible view of the law, defendant's interference was not so continuous or of such character as to confer upon him any right to such water, or to divest the plaintiff of any right; nor as to this water is there any substance in fact to the defense of estoppel."

We conclude that the facts as stated and the law applicable thereto require a reversal of the decree below, and that the case be remanded to that court, with directions to enter a decree in favor of the plaintiff as prayed; and it is so ordered.