GREEN v. WILLHITE et al.

(Circuit Court, D. Idaho, C. D. October 31, 1906.)

No. 270.

PUBLIC LANDS—DESERT LANDS—ENTRY—STATUTES — CONSTRUCTION — "CONSTRUCTED."

Act Cong. Aug. 30, 1890, c. 837, 26 Stat. 391 (U. S. Comp. St. 1901, p. 1553), provides that all patents for lands thereafter taken up under any of the land laws of the United States on entries or claims validated by the act, west of the one hundredth meridian, should reserve a right of way for ditches or canals, "constructed" by authority of the United States. *Held*, that the word "constructed," as so used, did not limit the reservation to a right of way for ditches already constructed, but extended as well to those "to be constructed" by the government in furtherance of its irrigation scheme for the reformation of arid lands.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, p. 1468.]

On Demurrer to Complaint.

Wood & Wilson, for complainant.

N. M. Ruick, for defendants.

BEATTY, District Judge. By this action complainant, as the owner of certain lands, is asking an injunction against defendants, restraining them from further excavating a certain canal over such lands, which they are constructing under the authority of the government. To the complaint the defendants interpose their demurrer, assigning that it does not state a cause of action.

To a proper understanding of the case the consideration of two acts of Congress is necessary. By the act approved October 2, 1888 (25 Stat. 526, c. 1069 [U. S. Comp. St. 1901, p. 1552]), it is provided that:

"All the lands which may hereafter be designated or selected by such United States surveys for sites for reservoirs, ditches or canals for irrigation purposes, and all the lands made susceptible of irrigation by such reservoirs, ditches or canals, are from this time henceforth reserved from sale as the property of the United States, and shall not be subject after the passage of this act to entry, settlement or occupation until further provided by law."

The act approved August 30, 1890 (26 Stat. 391, c. 837 [U. S. Comp. St. 1901, p. 1553]), provides for the repeal of so much of the above act "as provides for the withdrawal of the public lands from entry, occupation and settlement," but provides:

"That in all patents for lands hereafter taken up under any of the land laws of the United States or on entries or claims validated by this act, west of the one hundredth meridian, it shall be expressed that there is reserved from the lands in said patent described a right of way thereon for ditches or canals constructed by authority of the United States."

There are three tracts of land involved and described in the complaint, and all are such as are referred to by both said acts. By the first act it is provided that all "lands made susceptible of irrigation by such reservoirs, ditches or canals, are from this time henceforth hereby reserved from sale * * * and shall not be subject after the passage of this act to entry, settlement or occupation." As to the first-described tract, the S. W. ¼ of section 7, the complaint alleges that it "was entered as desert land, under the desert land laws of the United States, on the 25th day of May, 1888, by Calvin Cobb," who thereafter made his final proof and received his patent therefor. It is presumed that what complainant means is that on that date a "declaration" was filed as the law requires, and not that the land was entered, within the usual meaning given that word under the land laws and practice. It was the incipient step taken towards the acquisition of title to the land. This step was taken some months prior to the approval of the said first act of October 2, 1888.

The question occurs whether this initial step was sufficient to constitute such a right or title to or in the declarant as would prevent the Congress from legislating concerning it or of depriving the declarant of it. In the case of Frisbie v. Whitney, 76 U. S. (9 Wall.) 187, 19 L. Ed. 668, it was held under the pre-emption laws that the pre-emptor procured no title, which the government could not declare void, until he paid his purchase money and received his final receipt. Does this

also apply to a claim under the desert law? This law (Act March 3, 1877, c. 107, 19 Stat. 377 [U. S. Comp. St. 1901, p. 1548]) says "that it shall be lawful for any citizen * * * upon the payment of twenty-five cents per acre, to file a declaration under oath * * * that he intends to reclaim a tract of desert land," and then further directs how he shall proceed to finally procure his patent. Whether the rule applied by 76 U. S. 187, 19 L. Ed. 668, to the pre-emption law, also applies here, has not been specially discussed by counsel. I think, therefore, I should not finally pass upon it, further than to suggest that, as a portion of the purchase money must be made at the time the incipient steps are taken to acquire title, it would seem that the design of the act is to give the party such a title as cannot be taken from him, provided, he further so complies with the act as to be finally entitled to his patent.

The only serious contention by counsel is concerning the word "constructed," as used in the latter part of the clause above quoted from the act of 1890, to wit:

"A right of way thereon for ditches or canals constructed by authority of the United States."

The complainant contends that it refers only to ditches or canals already constructed, while defendants claim that it includes those to be constructed in connection with the irrigation reclamation service under the direct control of the government. But for the doubts suggested by counsel, none would have occurred to me as to the meaning of this word from a reading of the entire paragraph or the statute in which it is used. The acts referred to show that the Congress had been contemplating a system of government irrigation of the arid lands of the West which would require reservoirs and a canal system, and which should be under the direct management and control of the government. We know that often in such matters the government moves slowly, and takes its preliminary steps and discussions long before it finally puts the chief work into operation. In the legislation referred to, it was providing for preliminary surveys and investigations. Up to this time it never had entered upon any system of irrigation for the interest or benefit of the general public, although it may have had some small irrigating schemes on government reservations, where it owned or controlled all the lands, and which were not open to settlement by its citizens. It did many years since by acts, now revised into sections 2339, 2340, Rev. St. (U. S. Comp. St. 1901, p. 1437), make provision for the protection of such ditches and water rights as were recognized by local laws for "mining, agricultural, manufacturing and other purposes." In a sense it may be said that such ditches and canals are constructed by the authority of the United States; but the ditches or canals referred to in the acts under discussion are those to be constructed by the government in its irrigation schemes for the reclamation of its Western arid lands. As, at that time, it had no such ditches or canals, Congress must and could have referred only to those it intended to construct. But the act also provides for this right of way over lands to be hereafter taken up. If Congress referred only to canals already constructed, this provision would seem useless; for,

if a party enters lands on which the government already has a canal, he must take it with notice thereof and as it is, and the government needs no reservation for its right of way.

If there could be any serious doubt as to the meaning to be attached to this word, I think it is entirely dissipated by a consideration of the debate had in Congress over this act. That clearly shows that the intention was to include canals to be constructed by the government in its irrigation scheme. As my impression is that the parties will desire the ruling of a higher court, I deem it unnecessary to pursue the discussion further; but I cannot doubt that this word "constructed" is used in the statute in a general sense, and applies to ditches or canals constructed by the authority of the government, without reference to time.

The demurrer is therefore sustained.