Points Decided.

(February 7, 1908.)

## KATE GREEN, Respondent, v. CHARLES WILHITE and ED. CONWAY, Appellants.

[93 Pac. 971.]

RECLAMATION WORKS—GOVERNMENT DITCHES AND CANALS—GOVERNMENT RIGHT OF WAY FOR DITCHES AND CANALS.

1. Under the provisions of the sundry civil appropriation act of Congress of August 30, 1890 (26 Stats. at Large, 391), which provides: "That in all patents for lands hereafter taken up under any of the land laws of the United States, or on entries or claims validated by this act, west of the one-hundredth meridian, it shall be expressed that there is reserved from the land in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States," the word "constructed" as there used has a general reference and application to ditches or canals constructed by the authority of the United States without reference to the time of such construction.

2. Under the provisions of the act above quoted, it was the evident intention of Congress to reserve perpetually to the government an easement and right of way through and over any and all lands west of the one-hundredth meridian that the government might grant to settlers and purchasers subsequent to the passage of the act, and to thereby reserve the easement and right of way for the construction, maintenance and operation of any ditches and canals the government may construct at any time in the future for the irrigation and reclamation of arid lands.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District for the County of Canyon. Hon. Frank J. Smith, Judge.

Action by the plaintiff, as the owner of certain lands described in her complaint, to obtain an injunction restraining the defendants, as contractors under the United States, from trespassing upon plaintiff's land and doing excavation and constructing a canal across the same. The plaintiff alleged that she was the owner of a certain tract of land which she acquired from the United States on or about the 7th day

of December, 1893, and subsequent to the act of Congress approved August 30, 1890; that the defendants are contractors under the government of the United States for the construction of a portion of an irrigation canal known as the ''Boise-Payette Government Irrigation Project,'' and that as such contractors they had, without the permission or consent of the plaintiff, entered upon her lands and done certain work and excavation and threatened to continue the same to her injury and damage, etc.  It was also alleged in the complaint that the defendants claimed the right to enter upon the plaintiff's lands by authority of the act of Congress approved August 30, 1890 (26 U. S. Stats. at Large, 391), wherein and whereby it was and is provided, ''That all patents for lands hereafter taken up under any of the land laws of the United States, or on entries or claims validated by this act, west of the one-hundredth meridian, it shall be expressed that there is reserved from the land in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States.''  It was further alleged that the plaintiff's lands were entered and patented under the desert land laws of the United States, and that the entry and patent were subsequent to the approval of the act of August 30, 1890.  Defendants demurred to the complaint and the demurrer was overruled.  They declined to answer, and judgment was accordingly entered against them.  This appeal is from the judgment.  *Reversed.*

N. M. Ruick, for Appellants.

''In construing the terms of a statute, especially when the legislation is experimental, courts must take notice of the history of the legislation, and, out of different possible constructions, must select the one which best comports with the genius of our institutions.''  (*Tex. & Pac. Ry. v. Interstate Commerce Com.*, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. R. A. 940.)

''The general rule is perfectly well settled that, where a statute is of doubtful meaning and susceptible upon its face

·of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in ·question, the mischiefs intended to be remedied, the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction." (*Hamilton v. Rathbone,* 175 U. S. 414, 419, 20 Sup. Ct. 155, 44 L. ed. 219.)

"In the interpretation of an ambiguous statute, courts should examine it in the light of the history of its enactment as disclosed by the journals of the legislature, the contemporary history of the conditions and situation of the people, the economic and sociologic policy of the state, its constitution and laws, and all other matters of common knowledge within the limits of their jurisdiction." (*State v. Kelley,* 71 Kan. 811, 81 Pac. 450, 70 L. R. A. 450, and numerous other ·cases there cited.)

In a decision by the Secretary of the Interior under date of ·June 4, 1903 (32 L. D. 147), the act of 1890 was considered, and it was held that the canal reservation would apply for the benefit of canals constructed by the reclamation service as to all entries under the public or general land laws made .since October 2, 1888.

In the case of Green, administrator, against these same ·defendants, begun at the same time and removed from the district court of the seventh judicial district for Canyon ·county to the United States circuit court, the identical question involved in the case at bar was raised by demurrer to the complaint. Judge Beatty, on October 31, 1906, rendered .a decision (unpublished) sustaining the demurrer.

It is plain that the portion of the act of August 30, 1890, in question could have had no retroactive effect, not only because Congress had no power to claim such an easement for lands disposed of prior to that time, but also because no :such canal had ever been constructed by the United States upon public lands, and because any canals which might have been constructed by the United States before that date would .not require such legislation.

Edgar Wilson, for Respondent.

The reclamation act was passed June 17, 1902, twelve years after the right of way act of 1890. The debates cited by counsel for appellants not only fail to sustain the government's interpretation of this right of way act, but they show that Congress at that time had no intention of passing the reclamation act of 1902, and did not contemplate any such legislation. It is, therefore, fair to assume that the right of way act of 1890 cannot be interpreted as applicable to the supposed necessities of the government under the reclamation act passed twelve years thereafter.

The United States commenced the construction of irrigating ditches and canals long before the passage of the proviso of 1890, the interpretation of which is involved in this case.

Counsel for appellants, in citing the only authorities referred to in his brief, evidently conceives this to be a question of statutory construction. In our opinion it is not a question of statutory construction at all, but one involving the interpretation of the terms of a grant as expressed in the deed or patent. The statute simply declares that the patent shall contain a clause in effect that it is issued by the government subject to the right of way for canals constructed under the authority of the United States.

Treating the proviso involved in the act of 1890 as a reservation, creating a new easement of an indefinite and uncertain right of way out of the premises granted, almost of necessity, defeats the purposes of the grant.

Where the language of a deed will admit of two constructions, the one less favorable to the grantor is to be adopted. (2 Devlin on Deeds, 848, and cases cited in note 2.)

"Whenever the grant of the government is upon a valuable consideration, the rule of construction ceases, and the grant is expounded exactly as it would be in the case of a private grant, favorably to the grantee." (*Charles River Bridge v. Warren Bridge,* 11 Pet. (U. S.) 589, 9 L. ed. 841.)

"As in the case of a grant, the description of a thing reserved should be sufficiently definite as to enable it to be

identified. Thus, when a deed reserves out of the property conveyed one acre of the land, and there is nothing to show from what particular part of the tract it is to be taken, the reservation is void for uncertainty, and the grantee is entitled to the whole tract.'' (1 Devlin on Deeds, sec. 222, citing *Woodcock v. Estey,* 43 Vt. 515; *Jewett v. Ricker,* 68 Me. 377; *Mooney v. Cooledge,* 30 Ark. 640.)

The word ''constructed,'' as used in the patent referred to, has reference to canals constructed at the time the patent issues. The New Jersey courts have defined this word ''constructed'' in that sense, where similarly used, as follows:

''Act of March 6, 1877, which authorized corporations to condemn lands adjoining their roads as 'constructed' means the road actually existing.'' (*Akers v. United New Jersey R. & C. Co.,* 43 N. J. L. 110, 111; 2 Words and Phrases, 1468.)

The case of *Hedderly v. Johnson,* 42 Minn. 443, 18 Am. St. Rep. 521, 44 N. W. 528, is peculiarly in point. That case went so far as to use the words ''or hereafter to be constructed,'' which are significantly left out of the patent in this case. Yet the Minnesota court held that the easement depended on the fact of the then location of the line, and, unless the line had been located, the reservation was inoperative and ineffectual.

AILSHIE, C. J. (After stating the facts.)—The only question to be determined in this case is as to the true meaning and intent of the proviso found in the sundry civil appropriation act of Congress of August 30, 1890 (26 Stats. at Large, 391; 6 Fed. Stat. Ann. 508, [U. S. Comp. Stats. 1901, p. 1570]), which reads as follows: ''That in all patents for lands hereafter taken up under any of the land laws of the United States, or on entries or claims validated by this act, west of the one hundredth meridian, it shall be expressed that there is reserved from the land in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States.'' The determination must rest upon the meaning of the word ''constructed'' as used in the foregoing statute and the significance it bears in that connection. Has

it been used in this connection with reference to *time* or independent of time altogether? Counsel for appellant contends that it should be understood in the general sense of ditches or canals constructed by authority of the United States without any reference to time whatever. Taking the sentence as it stands alone without reference to any extraneous facts or circumstances, it is perhaps equally liable to either construction claimed for it. When we consider, however, the previous legislation by Congress on the same and kindred subjects, and the policy that the Congress was then outlining with reference to the irrigation and the reclamation of arid lands, we get an insight into the purpose of this legislation which it does not so clearly bear on its face. By the act of October 2, 1888 (25 U. S. Stats. at Large, 526, [U. S. Comp. Stats. 1901, p. 1552]), Congress enacted a law "for the purpose of investigating the extent to which the arid region of the United States can be redeemed by irrigation and segregation of the irrigable lands in said arid region, and for the selection of sites for reservoirs and other hydraulic works necessary for the storage and utilization of water for irrigation and the prevention of floods and overflows." By the terms of that act it was provided that "all lands which may hereafter be designated or selected by such United States surveys for sites for reservoirs, ditches or canals for irrigation purposes, and all the lands made susceptible of irrigation by such reservoirs, ditches, or canals, are from this time henceforth, hereafter reserved from sale as the property of the United States, and shall not be subject after the passage of this act to entry, settlement or occupation until further provided by law." Under the foregoing provisions of the statute, the Secretary of the Interior, on the advice of the attorney general (Opinion of the Attorney General, May 27, 1890), held that no entry of any kind could be made upon any land west of the one hundredth meridian until irrigable lands had been determined and the proclamation of the President had been made opening the lands to settlement. The interpretation and construction of the attorney general and the Secretary of the Interior placed upon the act of 1888, aroused the Congress, and especially the Senate, to

take immediate steps toward the repeal of that portion of the act of 1888 reserving unselected reservoir, ditch and canal sites from settlement. An examination of the Congressional Record, volume 21, pages 7269 to 7987 and 8270 to 9156, discloses various views on the subject and amendments offered with a view to correcting the vices and evils in the act of 1888. The Senate and House failed to agree upon the amendment, and something like a dozen conferences seem to have been held, and the statute as it now exists was a compromise finally agreed upon by the House and Senate conference committee. In presenting the conference report to the House of Representatives, Mr. Sayers of the committee said: "One further concession was obtained from the Senate conferees—that in the issuance of all patents by the government of the United States to any person whomsoever, under the operation of this law, there should be reserved in the arid land district the right of easement over lands embraced in the patents for irrigating ditches for public use."

In speaking of the same report in the Senate, on August 26, 1890, Senator Reagan said: "It seems to me that it is so important to the settlement of that country, to the interests of the people who are to occupy that country, that monopoly of the water should not be had by private persons or by corporations; that it would have been wise in the committee to agree that all reservoir sites and places for canals and ditches should be reserved. I see that they have done the equivalent in reserving places for canals and ditches by requiring that those who obtain lands, in their patents, should have a clause inserted that the right of way for canals and ditches shall be reserved. . . . . However much may be said about the House of Representatives in resisting that, they, in my judgment, are entitled to the profound gratitude of the American people for saving to them the little that they have saved in this conference report."

Senator Dolph, who was very bitterly opposed to the act of 1888, as construed by the attorney general, in speaking upon the proposed amendment which was afterward adopted and became the act of August 30, 1890, said: "But now it

appears that this provision will legalize and intrench in the statutes of the United States the withdrawal from the operations of the public land laws of tracts within a single state larger than the entire area of some of the states of the Union on the pretense that they are needed for reservoirs.

"Not only that, Mr. President, but by the last clause of the amendment proposed by the committee there is to be perpetuated a portion of the evil of this act of 1888 in every muniment of title that shall issue from the government of the United States for an acre of land west of the one hundredth meridian. It is provided that it shall be expressed in every patent issued for public land west of this meridian—'That there is reserved from the land in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States.' This provision, while it will be of no practicable value to anyone, will be a cloud or encumbrance on every man's title who secures a portion of the public domain."

It will be seen from an examination of all the reports and debates had in reference to the proposed amendments and the amendment itself, as finally passed on August 30, 1890, that the members of Congress, both those favoring and those opposing the act, believed and understood that it would have the effect of reserving a perpetual easement and right of way to the government for ditches and canals that might thereafter be constructed by authority of the government over lands which should be entered and patented subsequent to the passage of the act. It is further worthy of notice that prior to that time the government had not entered upon the construction of irrigation works, ditches and canals, and had never authorized the construction of any such works except in Indian and military reservations. The first intimation of such a scheme as a national project was contained in the act of October 2, 1888. The act authorized the irrigation survey and was made in the nature of a provision for obtaining accurate information concerning arid lands and the feasibility of the construction of reservoirs, dams and canals and the amount of lands that could be irrigated thereby.

This policy had more fully developed in the minds of the members of Congress when the act of Congress of August 30, 1890, was passed, and at that time a national irrigation policy seems to have been at least anticipated by some of the members. It is clear that in the adoption of this proviso, it was intended to reserve to the government easements and rights of way over the lands it might subsequently grant for any ditches or canals that it might construct in the future. Congress had made no provision for constructing any canals or ditches by the government, and if it should be held that the act only applied to ditches or canals that had been constructed at the time patent issued, it would in effect amount to a holding that the proviso had no meaning or effect whatever. Without subsequent legislation authorizing the government to construct ditches and canals, it would have been impossible for any ditches or canals to have been constructed by the government prior to the issuance of patents to anyone, and the proviso would have been meaningless. The Congress was taking this precautionary measure for the protection of a right of way to the government in the event it should later adopt a reclamation policy and enter upon such works. It intended thereby to save the government from the expense of purchasing and condemning rights of way when it got ready to construct any canal or ditch. Early in the history of this western country, Congress enacted sections 2339 and 2340, U. S. Rev. Stat., recognizing and granting rights of way across public lands for ditches and canals "used for mining, agriculture, manufacturing, or other purposes," and provided that all patents thereafter issued should be subject to such easements, and rights of way for ditches previously constructed. These provisions, however, had no reference to ditches or canals constructed by the government itself, for the obvious reason that the government was not at that time in the business of constructing ditches and canals. So far as we have been able to discover, there was no act of Congress prior to the act of August 30, 1890, which made any provision whatever for a reservation of easement or right of way to the government

for or on account of ditches and canals constructed by its authority over any of the public lands.

In view of the foregoing considerations we turn to the statute, and at once observe that it is necessary to read this statute with certain words implied which have been omitted, in order to arrive at either conclusion contended for on this appeal. First, if it be held that the statute intended only to reserve the right of way for ditches or canals that had been constructed across the lands prior to the entry of the lands or the issuance of patent, it would be necessary to supply the words so as to make the statute read, "for ditches or canals that *have been* constructed by the authority of the United States." If it means to include those that may hereafter be constructed, then the statute would read, "for ditches or canals that *may hereafter be* constructed by the authority of the United States." The construction would be no more strained in the one instance than the other. In view of this condition of the statute, we should be governed by the legislative intent as gathered from the debates and discussions had at the time of the passage of the act, as well as the history of legislation leading up to it, and of the contemplated legislation which this act was intended to aid and facilitate. So far as we are advised, the statute has never been passed upon by any court prior to this case, except on October 31, 1906, in the case of *Richard E. Green, Administrator, v. Charles Wilhite et al.,* in the U. S. circuit court for the district of Idaho.

In that case District Judge Beatty, in passing on a demurrer to the complaint, considered this statute, and among other things, said:

"The only serious contention by counsel is concerning the word 'constructed' as used in the latter part of the clause above quoted from the act of 1890, to wit: 'A right of way thereon for ditches or canals constructed by authority of the United States.' The complainant contends that it refers only to ditches or canals already constructed, in connection with the irrigation reclamation service under the direct control of the government. But for the doubts suggested by counsel, none would have occurred to me as to the meaning of this word

from a reading of the entire paragraph or the statute in which it is used.

"The acts referred to show that the Congress had been contemplating a system of government irrigation of the arid lands of the west which would require reservoirs and a canal system, and which would be under the direct management and control of the government. We know that often in such matters the government moves slowly, and takes its preliminary steps and discussions long before it finally puts the chief work into operation. In the legislation referred to, it was providing for preliminary surveys and investigations. Up to this time it never had entered upon any system of irrigation for the interest or benefit of the general public, although it may have had some small irrigating schemes on government reservations where it owned or controlled all the lands and which were not open to settlement by its citizens. . . . . I cannot doubt that this word 'constructed' is used in the statute in a general sense and applies to ditches or canals constructed by the authority of the government without reference to time." This being a federal statute, and the foregoing decision being from a federal court, although not the court of last resort, is necessarily strong persuasive authority in a state court. Notwithstanding that, however, we are satisfied that the statute should be construed as above suggested. We hold, therefore, that the demurrer in this case should have been sustained. The judgment of the trial court is *reversed* and the cause remanded, with direction to sustain the demurrer. Costs awarded in favor of the appellant.

Sullivan, J., and Stewart, J., concur.