Earl D. HILLSTRAND and Mary Jane Hillstrand, Plaintiffs,

v.

STATE OF ALASKA: Department of Public Works, State of Alaska; Richard Downing, Commissioner of the Department of Public Works, State of Alaska; Lee Hubbard, Director of Highways, Department of Public Works, State of Alaska; M. B. Contracting Co., Defendants.

John C. ZAK, Plaintiff,

v.

UNITED STATES of America; The Bureau of Public Roads of the U. S. Department of Commerce of The United States of America; E. H. Swick, Regional Director of the Bureau of Public Roads of the United States Department of Commerce; State of Alaska; Department of Works of the State of Alaska; Richard Downing, Commissioner of Public Works of the State of Alaska, Defendants.

Civ. Nos. A–16205, A–16247.

District Court, Alaska,
Third Division, Anchorage.

Feb. 19, 1960.

Review Denied May 13, 1960.

Plummer & Delaney, Anchorage, Alaska, for plaintiffs Earl D. Hillstrand and Mary Jane Hillstrand.

Irvine & Clark, Anchorage, Alaska, for plaintiff John C. Zak.

Warren C. Colver, Asst. Atty. Gen., for defendant State of Alaska.

Merrell L. Andersen, Asst. U. S. Atty., Anchorage, Alaska, for defendant United States.

McCARREY, District Judge.

These two cases have been consolidated for the purpose of a jurisdictional determination on a question of law common to both. The State of Alaska has filed a motion for summary judgment, wherein they request the Court to dismiss the claims for relief filed by the plaintiffs for the reason that 48 U.S.C.A. § 321d gives the State the right to enter upon the property in question for the purpose of changing present existing roadways and making improvements thereon, without the necessity of paying compensation to the landowners.

The facts in this case are that Plaintiff Hillstrand presently is the owner of record of a certain piece of property more particularly described as:

Northwest One-quarter of the Southwest One-quarter of Section Fourteen, Township Six South, Range Fourteen West, Seward Meridian,

in the Homer Recording Precinct. Plaintiff Zak is presently the owner of the following described property:

From the one-quarter (¼) section corner common to Section One (1) and Section Twelve (12), Township Seventeen North (T17N), Range Two West (R2W), Seward Meridian, thence South 305 feet to the point of beginning; thence South 182.7 feet to Wasilla-Big Lake Road right-of-way; thence South 78°31′ West 673.2 feet along Wasilla-Big Lake Road right-of-way; thence North a distance of 316.7 feet to South edge of Zak Lake; thence Easterly along shore of Lake Zak 660 feet to point of beginning. Said tract contains 3.8 acres.

Defendant State of Alaska, purporting to act under the authority of Act of Congress of July 24, 1947, 61 Stat.. 418; 48 U.S.C.A. § 321d; § 41-1-4 A.C.L.A. 1949, proposes to enter upon plaintiff Hillstrand's land and thereon relocate a certain highway, known as the Sterling Highway, and in so doing contends that it needs only to compensate the owner of the property for "the value of crops and for adjustment of improvements located on the right-of-way area." See letter dated June 1, 1958 from E. H. Swick, Regional Engineer, to Earl A. Hillstrand. Purporting to act under the same authority, the State of Alaska, in improving the "Big Lake-Wasilla Road", has entered upon plaintiff Zak's land and "widened and improved the roadway, including necessary cutting and filling for the roadbed," see Memorandum of Facts submitted by the Attorney General Dec. 3, 1959, and in so doing has allegedly dug and removed earth from Zak's property to his damage. In both suits the plaintiffs pray for damages for the injury already done, and in No. A 16,205, as the relocation is not yet completed, the plaintiff asks for an order restraining the State from proceeding further with the work already commenced until such time as appropriate condemnation proceedings, as provided for in Section 57-7-1 et. seq., A.C.L.A. 1949, are instituted.

The following excerpts from a letter to the Speaker of the House of Representatives from Oscar Chapman, Acting Secretary of the Interior, dated January 13, 1947, and included in the "Explanation Of The Bill," printed in U.S.Code Cong.Serv., 1st Session (1947) pp. 1352, 1353, set out clearly what the intent of Congress in enacting 48 U.S.C.A. § 321d was:

"The purpose of the enclosed draft is to provide for the reservation by the United States in patents or deeds to land in Alaska of rights-of-way for trails, roads, highways, tramways, bridges, and appurtenant structures constructed or to be constructed by the authority of the United States or of any future State created in Alaska. Such legislation is desirable to facilitate the work of the Alaska Public Road Commission.

"The greater part of the area on which the operations of the Alaska Road Commission are conducted is public domain land outside of national forests, and the location of rights-of-way on such land presents no serious problem. However, for the proper location of roads and in the interest of public service, it is necessary in some instances to cross lands to which title has passed from the United States. These instances are becoming more numerous as the population of the Territory increases, and obtaining rights-of-way over such lands has in a number of cases presented difficulties requiring court action and the expenditure of Federal funds.

"The proposed legislation is similar to the provision of the act of August 30, 1890 (26 Stat. 391, 43 U.S.C. sec. 945), which reserves rights-of-way for ditches and canals constructed by the authority of the United States, west of the one hundredth meridian. A similar provision is also found in the act of March 12, 1914 (38 Stat. 305, 48 U.S.C. sec. 305), by which rights-of-way for railroads were reserved to the United States in all patents for lands thereafter taken up in the Territory of Alaska. The proposed bill would be applicable to both public domain and acquired lands of the United States. The proposed bill, moreover, would authorize the head of the agency utilizing such reserved right-of-way to make payment for the full value of the crops and improvements thereon."

It is clear that Congress, in 1947, was concerned that the same persons who were acquiring land under the liberal provisions of the Homestead laws would be in a position to demand compensation from the Government if, at a later date, the Government should deem it necessary to use a portion of the same land for highway purposes. As the future position of highways over the public lands could not be predicted with any accuracy, Congress rather logically concluded that it would insert an appropriate reservation in every patent thereafter issued to Alaska homesteaders. The magnitude of the cloud which this bit of legislation placed upon titles to land in Alaska was appreciated, however by the 86th Congress and, therefore, 48 U.S.C.A. § 321d was repealed in the Alaska Omnibus Act, 73 Stat. 141 (Sec. 21(d) (7)).

As noted in the Chapman letter, parts of which have been set out *supra*, the reservation in 48 U.S.C.A. § 321d was similar to two prior Acts of Congress, the Act of August 30, 1890, reserving rights-of-way for ditches and canals, and the Act of March 12, 1914, reserving rights-of-way for railroads.

There appears to be very little case law interpreting any of these three statutes, the only case directly in point being Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407. That case involved the right of the United States to straighten, widen, and deepen a ravine to be used as a ditch for collecting seepage from an irrigation project. The owner of the land challenged the right of the United States to make the changes in the ravine, contending that the changes would involve trespass on his land. In applying the reservation in the Act of August 30, 1890 to the ravine in question, the Supreme Court of the United States had occasion to discuss the history and the intent of the act. At pages 502–503 of 263 U.S., at page 183 of 44 S.Ct. it is said that:

"At an early stage of the investigations Congress became solicitous lest continued disposal of lands in that region under the land laws might render it difficult and costly to obtain necessary rights of way for canals and ditches when the work was undertaken. To avoid such embarrassment Congress at first withdrew great bodies of the lands from disposal under the land laws. * * * That action proved unsatisfactory, and, by the Act of August 30, 1890, Congress repealed the withdrawal,

restored the lands to disposal under the land laws and gave the direction that in all patents there should be a reservation of rights of way, etc. Of course the direction must be interpreted in the light of circumstances which prompted it, and when this is done, the conclusion is unavoidable that the direction is intended to include canals and ditches constructed after patent issues quite as much as those constructed before. All courts in which the question has arisen have taken this view. Green v. Willhite, C.C., 160 F. 755; United States v. Van Horn, D.C., 197 F. 611; Green v. Willhite, 14 Idaho 238, 93 P. 971. * * *

"A contention is made that the statute and the reservation in the patents are confined to ditches constructed while the state owned the land. But it is not claimed that the Supreme Court of the state has so decided, and as we read the statute and reservation they refute the contention. * * * We conclude that the plaintiff has a lawfully reserved right of way over the tracts of the defendants for such ditches as may be needed to effect the irrigation of the lands which the project is intended to reclaim, and that the defendants were appraised of this right by the patents which passed the tracts to them. In short, they received and hold the title subject to the exercise of that right.

"Assuming that there is the ravine crossing these tracts no natural stream or flow of water is susceptible of effective appropriation. The plaintiff undoubtedly has the right to make any needed changes in the ravine and use it as a ditch in irrigating project lands."

Defendant State of Alaska, in the instant case, argues that Ide v. United States, supra, is clear authority for its acts upon the Zak and Hillstrand properties. Thus, at page 9 of the State's "Further Memorandum of Points and Authorities in Support of Motion for Summary Judgment," in the Hillstrand case file, the State argues, after quoting from the Ide opinion, "it appears evident that if property can be utilized for a change of a ravine after the issuance of patent, under a similar reservation of a right-of-way, the State could make any needed changes in the width or route of a right-of-way crossing land subject to such a reservation." I am unable to agree with the State that the Ide case is authority for making more than one election under the statutory reservations. Indeed, I find no case, nor has the State cited any, in which the Sovereign, after once exercising its right under any of the reservations found in the three Acts of Congress, has been permitted to avail itself a second time of such reservations.

■ Finding no other helpful cases construing the Federal reservations, we must turn to the law of private easements. "Blanket" or "floating" easements are relatively common phenomena; however, their interpretation appears to have been controlled by that policy of the law which favors *making all encumbrances affecting real property as specific and definite as possible so that the interests of the various owners or claimants of the land can be accurately ascertained.* Thus, in In re Oak Leaf Coal Company, D.C.Ala.1915, 225 F. 126, 127, 129, involving a deed reserving to the grantor the right "to build railroads through said land in order to reach other lands beyond and above," the Court said:

"The right of way is not defined in the grant, but has been actually located on the ground, with the acquiescence of the respondent, and this as effectually serves to define the grant as would a description in the deed. The grant, so defined, ceases to be uncertain, and no use of the right of way, other than one that is reasonable and necessary to develop the lands covered by the reservation, would be permitted."

This rule is fully supported by the law. See particularly Youngstown Steel

Products Company of Cal. v. City of Los Angeles, 1952, 38 Cal.2d 407, 240 P.2d 977, 979, ("Once the location of an easement has been finally established, whether by express terms of the grant or by use and acquiescence, it cannot be substantially changed without the consent of both parties. * * * And the grantor has no right either to hinder the grantee in his use of the way or to compel him to accept another location, even though a new location may be just as convenient." 240 P.2d at page 979); Capital Electric Power Association v. Hinson, 1956, 226 Miss. 450, 84 So.2d 409, ("The general rule is that where the grant is in general terms, the exercise of the right, with the acquiescence of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed. * * * This rule * * * applies to the course, manner, extent, and length." 84 So.2d at page 413); Woods Irrigation Company v. Klein, 1951, 105 Cal.App.2d 266, 233 P.2d 48 ("Therefore, the ditches necessary * * * once located, cannot be relocated. Any other rule would make the burden imposed by the easement a matter of perpetual speculation and subject the servient owners to continual uncertainty as to their rights to the use and enjoyment of their land." 233 P.2d at page 50).

It, therefore, appears that there is little or no authority to support the State's position in its request for summary judgment, aside from some general statements of law to the effect that reservations in deeds are to be construed most strongly against the grantee when the grantor is a sovereign, Shively v. Bowlby, 1894, 152 U.S. 1, 10, 14 S.Ct. 548, 38 L.Ed. 331.

Counsel for the State has argued that it was the legislative intent to permit the State or the Federal Government to move quickly in establishing new roads and to do so without incurring the expenses which the law requires in ordinary condemnation proceedings. That is,

that this statute promotes the greatest good for the greatest number.

Our Constitution, while considering the welfare of all individuals generally, nevertheless provides that there are certain inalienable rights which must be protected and it has been the protection of these small individual rights which has distinguished this nation over all other nations.

■ While I agree that the original reservation and election provided for in 48 U.S.C.A. § 321d is without limitation as to initial choice on the part of either the Federal Government or the State of Alaska, I find that, once the right-of-way has been selected and defined, later improvements, necessitating the utilization of land upon which the road is not already located, can only be accomplished pursuant to the condemnation and compensation provisions of Section 57–7–1, et seq. A.C.L.A.1949.

As Ide v. United States, supra, 263 U.S. at 502, 44 S.Ct. at page 183, makes clear that the wording of the 1890 statute covered rights-of-way already established at the time of its passage, I so find as to the 1947 statute, and, therefore, in the light of what already has been set out *supra*, I hereby deny the State's motion for summary judgment in No. A–16,205 for the reason that the State's predecessor, the United States, had already established a road across what is now the Hillstrand property at the time the 1947 reservation was authorized.

Turning to the Zak case, the file discloses that the Big-Lake-Wasilla Road was constructed in 1949, at which time the land over which it ran was still part of the public domain. See "Memorandum of Fact", filed by the Attorney General in case file No. A–16,247, December 3, 1959. Interpreting the construction at that time as constituting the single election to which the State is entitled, I find that, once Zak had filed his Homestead application any changes by the State to the right-of-way already selected and defined would likewise have to be condemned and compensated for under

the provisions of 57–7–1 et. seq. A.C. L.A.1949. Therefore, I hereby deny the motion for summary judgment on the part of the State of Alaska in case No. A–16,247.

The decision of other questions of law, including that of whether in fact plaintiff Hillstrand's predecessor in title, Meredith J. Steele, had "taken up, entered or located" upon the property in question before the date of the 1947 Act, not being essential to this opinion, is left for later determination.