A. J. MYERS, Plaintiff,

v.

UNITED STATES of America, doing business in Alaska as Bureau of Public Roads; and McLaughlin, Inc., a corporation, Defendants.

Walter James WEAVER and Idella Weaver, husband and wife, Plaintiffs,

v.

UNITED STATES of America, doing business in Alaska as Bureau of Public Roads; and McLaughlin, Inc., a corporation, Defendants.

Civ. Nos. A–16481 and A–16632.

United States District Court
D. Alaska,
Anchorage.
Nov. 27, 1962.

Bailey E. Bell, Bell, Sanders & Tallman, Anchorage, Alaska, for plaintiffs.

Warren C. Colver, U. S. Atty., by Weyman I. Lundquist, Asst. U. S. Atty., Anchorage, Alaska, for defendants United States of America.

David H. Thorsness, Hughes, Thorsness & Lowe, Anchorage, Alaska, for defendant McLaughlin, Inc.

PLUMMER, District Judge.

These actions were filed under the Federal Tort Claims Act, 28 U.S.C., §§ 1346 (b), 2671–2680. They arise out of a road known as the Wasilla-Big Lake Junction Road constructed by McLaughlin, Inc., under a contract with the Bureau of Public Roads in the year 1959, across a portion of lands owned by the plaintiffs. Both actions are predicated upon trespass, waste, and conversion of gravel removed outside of and beyond a right-of-way plaintiffs allege had been formerly established.

Plaintiff Myers, in his second amended complaint, alleges that a long time prior to entering into the contract and the commencement of the work complained of, a road right-of-way 66 feet in width had been taken, reserved and established and had been in use for many years. During the course of trial he changed his position to claim an established right-of-way 100 feet in width. Plaintiff Myers alleges that in the construction of the road in 1959 the defendants committed waste and other trespasses on his land and damaged his land in the following particulars:

(1) That the defendants ruined plaintiff's road into his field of agricultural land used for raising produce, to his damage in the sum of $6,583.20;

(2) That defendants, without authority, went upon the private land of plaintiff, dug a gravel pit, and took out gravel to the extent of 18,147.4 yards of gravel on one side of the highway and 7,856.6 yards of gravel on the other side of the highway, of the reasonable value of $1.00 per yard, without permission and without compensation, to plaintiff's damage in the sum of $26,000.00;

(3) That defendants destroyed the surface of 8 lots owned by plaintiff, of the value of $600.00 each, to plaintiff's damage in the sum of $4,800.00;

(4) Changing the grade of plaintiff's driveway into his coffee shop and restaurant, $5,000.00;

(5) Loss of timber and trees around plaintiff's home, $5,000.00;

(6) Defendants parked their equipment on plaintiff's property for 16 days to plaintiff's damage in the sum of $320.-00;

(7) Loss of business by obstructing the entrance to plaintiff's property, $300.00;

(8) Destruction of signs erected by plaintiff fronting the highway, $200.00; and

(9) Reduction in value of plaintiff's property on account of taking and grading the highway in front of and on both sides of plaintiff's home and place of business, $12,000.00.

Total damages claimed—$60,203.20.

Plaintiff Weaver, in his second amended complaint, alleged that a right-of-way 66 feet in width had been taken, reserved

and established and had been in use as a highway for many years. He alleges that in the construction of the road in 1959 the defendants committed waste and other trespasses on his land and damaged his land in the following particulars:

(1) Trespass upon plaintiff's land to the extent of 210 feet in excess of the right-of-way reserved in plaintiff's patent of 66 feet;

(2) Damage to plaintiff's cleared garden or agricultural tract, $4,140.00;

(3) Damage to plaintiff's driveway and homesite and taking of gravel in this area to the extent of 13,337 yards of the reasonable value of $1.50 per yard, $20,-005.50;

(4) Taking of an additional 5,434 cubic yards of gravel beyond the right-of-way of the value of $1.50 per yard, $8,151.00;

(5) Destruction of plaintiff's driveway, making it necessary to move garage, house and outbuildings, $10,000.00;

(6) Taking 8.5 acres of land in relocating a new road across a portion of plaintiff's land, and removing gravel, $25,000.-00;

(7) Tearing up and destroying roadway into plaintiff's land, $5,000.00;

(8) Moving, relocating and rebuilding plaintiff's residence, $10,000.00;

(9) Taking a portion of the right-of-way, resulting in the abandonment of construction of an asphalt plant, $25,000.-00; and

(10) Bulldozing holes in plaintiff's property, $750.00.

Total damages claimed above, $108,-046.50; total prayed for, $73,046.50.

The defendant United States denies any trespass upon plaintiffs' lands, or waste, or the taking or conversion of plaintiffs' property or damaging the same. By affirmative defense this defendant asserts:

(1) That the patents to plaintiffs' lands from the United States reserved a right-of-way for roads and highways in accordance with the Act of Congress of July 24, 1947 (48 U.S.C.A. § 321d) and that all acts alleged by plaintiffs were done within and consistent with the rights reserved in such patents in connection with improving of Highway Route 510, referred to as the Wasilla-Big Lake Junction Project, and that notice of the utilization of such right-of-way pursuant to the Federal Highway Act of 1956 was sent to plaintiffs by registered mail;

(2) That any acts done not provided for by contract with McLaughlin, Inc., or outside the areas reserved to the United States will be shown to be the responsibility of the contractor and not the United States;

(3) That the roads were constructed in accordance with the plans of the Bureau of Public Roads and that such construction is a discretionary act for which the United States is immune from suit;

(4) That the signs of the plaintiff were placed within the right-of-way reserved to the United States in violation of Federal Highway Aid regulations and applicable state law; and

(5) That if the evidence shows that any trees, rocks, or topsoil was bulldozed upon the plaintiffs' lands, outside of the right-of-way reserved to the United States of America, or that the roadway in front of plaintiff's residence was widened to a greater extent than was originally planned, such acts were done at the plaintiffs' request and with their permission.

With reference to the first affirmative defense of the United States, plaintiffs claim that the government had already taken a right-of-way 100 feet in width across the land of plaintiff Myers and a right-of-way 66 feet in width across the land of plaintiff Weaver and that the acts done were outside of such rights-of-way.

The defendant McLaughlin, Inc., claims that the work done by them was with the consent and acquiescence of the plaintiffs; further, that all acts done by them were within the right-of-way and were done pursuant to its contract with the United States.

By way of cross-claim against the United States, defendant McLaughlin, Inc., prays that should it suffer a judgment as

a result of any damage sustained by plaintiffs it be indemnified by the United States for any such loss, including the cost of defense against said claim. The United States denies such cross-claim.

The road from Wasilla to Big Lake Junction was constructed in 1949 by the Alaska Road Commission, the predecessor of the Bureau of Public Roads.

The plaintiffs Alva J. Myers and Walter James Weaver made entries and initiated their rights in the year 1953.

A patent dated March 21, 1954 was issued to Alva J. Myers and a patent dated July 16, 1956 was issued to Walter James Weaver. Each of the patents provided in part as follows:

> "NOW KNOW YE, That the UNITED STATES OF AMERICA, in consideration of the premises, DOES HEREBY GRANT unto the said claimant and to the heirs of the said claimant the tract above described; TO HAVE AND TO HOLD the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging, unto the said claimant and to the heirs and assigns of the said claimant forever; subject to * * *, and (3) the reservation of a right-of-way for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under authority of the United States or by any State created out of the Territory of Alaska, in accordance with the act of July 24, 1947 (61 Stat., 418, 48 U.S.C. sec. 321d) * * * *"

■■ In adopting laws under which it will transfer public land to private persons, the government has power to grant such lands in fee, or less than fee and on such terms and conditions as it may consider appropriate. The lands here involved were conveyed to the plaintiffs by the government subject to the foregoing reservation and the patents issued by the government to the plaintiffs were accepted by the plaintiffs with full

knowledge of the reservation contained therein. Accordingly, the plaintiffs received and hold title subject to such reservation.

The survey for the improved road was made and the location thereof staked in 1957. A notice of intent to utilize the right-of-way created by 48 U.S.C.A. § 321d and reserved in the patents issued by the government to plaintiffs was given to plaintiffs by the Bureau of Public Roads in a letter dated October 28, 1958. The road was reconstructed in 1959.

The defendant contends that it has a reserved right-of-way over the lands in question by reason of 48 U.S.C.A. § 321d and the reservations contained in the patents issued to plaintiffs Myers and Weaver.

48 U.S.C.A. § 321d provides as follows:

> "In all patents for lands hereafter taken up, entered, or located in the Territory of Alaska, and in all deeds by the United States hereafter conveying any lands to which it may have reacquired title in said Territory not included within the limits of any organized municipality, there shall be expressed that there is reserved, from the lands described in said patent or deed, a right-of-way thereon for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under the authority of the United States or of any State created out of the Territory of Alaska. When a right-of-way reserved under the provisions of sections 321a–321d of this title is utilized by the United States or under its authority, the head of the agency in charge of such utilization is authorized to determine and make payment for the value of the crops thereon if not harvested by the owner, and for the value of any improvements, or for the cost of removing them to another site, if less than their value."

The legislative history of 48 U.S.C.A. § 321d appears in U.S.Code Congressional Service, First Session, (1947) pages

1352–1353. From this legislative history it is evident that Congress was not too concerned with the work of the Alaska Road Commission in locating rights-of-way over the public domain outside of national forests since that situation presented no serious problem. However, it is apparent that Congress was concerned with the instances where it was necessary to locate rights-of-way across lands to which title had passed from the United States. Such instances were becoming more numerous and Congress intended by the enactment of 48 U.S.C.A. § 321d to avoid the expense and delay of court action and the expenditure of federal funds in obtaining rights-of-way for public roads in Alaska.

Legislation similar to 48 U.S.C.A. § 321d is found in 43 U.S.C.A. § 945 and 48 U.S.C.A. § 305. In United States v. Ide, 277 F. 373, 381 (8th Cir. 1921), the Court stated in part as follows:

"The statute in question [43 U.S.C.A. § 945] has been construed by the courts in the following cases: Green v. Willhite (C.C.) 160 Fed. 755 (1906); Green v. Willhite [Wilhite], 14 Idaho, 238, 93 Pac. 971 (1908); U. S. v. Van Horn (D.C.) 197 Fed. 611 (Colo.1912). In those cases the courts have placed the same construction upon the statute as we have indicated. In Green v. Willhite [Wilhite], 14 Idaho, 238, 93 Pac. 971, a detailed history of the act and the discussions in Congress relative to its purpose and interpretation are given. It appears clearly from said history, as stated by the Supreme Court of Idaho, that the members of Congress, both those favoring and those opposing the act, believed and understood that it would have the effect of reserving a perpetual easement and right of way to the government for ditches and canals that might thereafter be constructed by authority of the government *over lands that should be entered and patented subsequent to the passage of the act*." (Emphasis supplied.)

In Cosby v. Danziger, 38 Cal.App. 204, 175 P. 809, 810, in discussing 43 U.S.C.A. § 945, the Court stated:

"The object of this legislation was to save to the government the right to *thereafter enter upon land for which patents might be issued*, and construct and maintain thereon such canals and ditches as might be deemed necessary in furtherance of the government's policy for the reclamation of arid lands. Green v. Willhite (C.C.) 160 Fed. 755; United States v. Van Horn (D.C.) 197 Fed. 611." (Emphasis supplied.)

■ From the legislative history of 48 U.S.C.A. § 321d and the interpretation given 43 U.S.C.A. § 945 in the cases cited, it is apparent that Congress in enacting 48 U.S.C.A. § 321d was primarily concerned with the instances where it might be necessary to acquire rights-of-way across lands to which title had passed from the United States and the lands were no longer a part of the public domain.

A classic example of what Congress intended to avoid is illustrated or demonstrated by the present case where patents were issued by the federal government under the liberal provisions of the homestead laws in 1954 and 1956 and claims totalling $133,249.70 were asserted in 1959 against the federal government for improving the roadway across the lands embraced within the patents, by the Bureau of Public Roads, an agency of the federal government from funds appropriated for that purpose by the Congress of the United States.

In Zak v. United States, 181 F.Supp. 219, 223 (D.C.Alaska 1960), the District Court for the District of Alaska in an action involving the road which is the subject matter of the present case stated as follows:

"Turning to the Zak case, the file discloses that the Big-Lake-Wasilla road was constructed in 1949, at which time the land over which it ran was still a part of the public

domain. * * * Interpreting the construction at that time as constituting the single election to which the State is entitled, I find that, once Zak had filed his homestead application any changes by the State to the right-of-way already selected and defined would likewise have to be condemned and compensated for under the provisions of 57–7–1 et seq. A.C. L.A. 1949."

I am unable to agree with the conclusion reached in the Zak case, supra, that the construction of the road across the public domain in 1949 by the Alaska Road Commission constituted an election or an exercise of the reservation created by 48 U.S.C.A. § 321d and reserved in the patent issued to the plaintiffs in this action. Since the land over which the road was constructed was public domain in 1949 the United States needed no reservation for its right-of-way.

Where a public road has been created over a part of the public domain, one who thereafter acquires title to, or rights in, that part of the public domain takes and holds subject to the right-of-way for such road and the rights of the public are not affected by the passing into private ownership of land over which a public road has been established. Accordingly, when the plaintiffs Myers and Weaver made their entries and initiated their rights in the year 1953, they did so with notice of, and subject to, the roadway constructed by the United States in 1949.

I find that the improvement of the Wasilla-Big Lake Junction Road in the year 1959 was the first exercise by the United States of the reservation contained in the patents issued to Alva J. Myers and Walter James Weaver.

While 48 U.S.C.A. § 321d authorized the reservation of a right-of-way for roads and roadways in all patents for lands taken up, entered or located in the Territory of Alaska after July 24, 1947, it did not purport to fix the location or the width thereof.

Order No. 2665 [1], Department of Interior, dated October 16, 1951 recited that the right-of-way or easement for local

---

1. [Order 2665] RIGHTS-OF-WAY FOR HIGHWAYS IN ALASKA

"Section 1. *Purpose.* (a) The purpose of this order is to (1) fix the width of all public highways in Alaska established or maintained under the jurisdiction of the Secretary of the Interior and (2) prescribe a uniform procedure for the establishment of rights-of-way or easements over or across the public lands for such highways. Authority for these actions is contained in section 2 of the act of June 30, 1932 (47 Stat. 446, 48 U.S.C. 321a).

"Sec. 2. *Width of public highways.* (a) The width of the public highways in Alaska shall be as follows:

"(1) For through roads: The Alaska Highway shall extend 300 feet on each side of the center line thereof. The Richardson Highway, Seward-Anchorage Highway, Anchorage-Lake Spenard Highway and Fairbanks-College Highway shall extend 150 feet on each side of the center line thereof.

"(2) For feeder roads: Abbert Road (Kodiak Island), Edgerton Cutoff, Elliott Highway, Seward Peninsula Tram road, Steese Highway, Sterling Highway, Taylor Highway, Northway Junction to Airport Road, Palmer to Matanuska to Wasilla Junction Road, Palmer to Finger Lake to Wasilla Road, Glenn Highway Junction to Fishhook Junction to Wasilla to Knik Road, Slana to Nabesna Road, Kenai Junction to Kenai Road, University to Ester Road, Central to Circle Hot Springs to Portage Creek Road, Manley Hot Springs to Erueka Road, North Park Boundary to Kantishna Road, Paxson to McKinley Park Road, Sterling Landing to Ophir Road, Iditarod to Flat Road, Dillingham to Wood River Road, Ruby to Long to Poorman Road, Nome to Council Road and Nome to Bessie Road shall each extend 100 feet on each side of the center line thereof.

"(3) For local roads: All public roads not classified as through roads or feeder roads shall extend 50 feet on each side of the center line thereof.

"Sec. 3. *Establishment of rights-of-way or easements.* (a) A reservation for highway purposes covering the lands embraced in the through roads mentioned in section 2 of this order was made by Public Land Order No. 601 of August 10, 1940, as amended by Public Land Order No. 757 of October 16, 1951. That order operated as a complete segregation of the land from all forms of appropria-

roads should extend fifty feet on each side of the center line thereof.

Order No. 2665, Department of Interior, was amended by Amendment No. 1, dated July 17, 1952, in a manner not pertinent to these cases.

Order No. 2665, Department of Interior, was amended by Amendment No. 2[2], dated September 15, 1956, by designating the Palmer-Wasilla-Willow Road as a through road and by deleting the Palmer-Finger Lake-Wasilla Road from the list of feeder roads. This amendment reclassified the road here involved from a local road to a through road with a width of 300 feet.

The United States did not elect to utilize or exercise the right-of-way reserved in the patents issued to plaintiffs until 1959 at which time the right-of-way extended 150 feet on each side of the center line thereof.

The contract between the Bureau of Public Roads and the defendant McLaughlin, Inc., provided for the grading, drainage and bituminous treatment of 9.6 miles of the Wasilla-Big Lake Junction Road. The letter of October 23, 1958 sent to the plaintiffs by the Bureau of Public Roads gave written notice to plaintiffs of the defendant's intention to utilize the rights-of-way reserved in the patents issued to them. A plan and profile sheet of the design drawing showing the exact location of the highway to be constructed, the width of the rights-of-way in and through the property of the plaintiffs which was to be utilized pursuant to the reservation in the patents, was enclosed in this letter and plaintiffs were specifically advised that the Bureau of Public Roads was not authorized to reimburse them for the land.

The location of the improved road had been surveyed and staked in 1957. The actual construction work commenced in 1959 and extended over a period of months. Plaintiffs were in and about the area during the period of construction and were fully aware of what was being done and the manner in which it was being done. Nevertheless there is no evidence to establish that plaintiffs, or either

---

tion under the public-land laws, including the mining and the mineral leasing laws.

"(b) A right-of-way or easement for highway purposes covering the lands embraced in the feeder roads and the local roads equal in extent to the width of such roads as established in section 2 of this order, is hereby established for such roads over and across the public lands.

"(c) The reservation mentioned in paragraph (c) and the rights-of-way or easements mentioned in paragraph (b) will attach as to all new construction involving public roads in Alaska when the survey stakes have been set on the ground and notices have been posted at appropriate points along the route of the new construction specifying the type and width of the roads.

"Sec. 4. *Road maps to be filed in proper Land Office.* Maps of all public roads in Alaska heretofore or hereafter constructed showing the location of the roads, together with appropriate plans and specifications, will be filed by the Alaska Road Commission in the proper Land Office at the earliest possible date for the information of the public.

"OSCAR L. CHAPMAN,
"Secretary of the Interior."

2. [Order 2665, Amdt. 2] ALASKA. RIGHTS OF WAY FOR HIGHWAYS.

"1. Section 2(a) (1) is amended by adding to the list of public highways designated as through roads, the Fairbanks-International Airport Road, the Anchorage-Fourth Avenue-Post Road, the Anchorage International Airport Road, the Copper River Highway, the Fairbanks-Nenana Highway, the Denali Highway, the Sterling Highway, the Kenai Spur from Mile 0 to Mile 14, the Palmer-Wasilla-Willow Road, and the Steese Highway from Mile 0 to Fox Junction; by re-designating the Anchorage-Lake Spenard Highway as the Anchorage-Spenard Highway, and by deleting the Fairbanks-College Highway.

"2. Section 2(a) (2) is amended by deleting from the list of feeder roads the Sterling Highway, the University to Ester Road, the Kenai Junction to Kenai Road, the Palmer to Finger Lake to Wasilla Road, the Paxson to McKinley Park Road, and the Steese Highway, from Mile 0 to Fox Junction, and by adding the Kenai Spur from Mile 14 to Mile 31, the Nome-Kougarok Road, and the Nome-Teller Road.

"FRED A. SEATON,
"Secretary of the Interior."

of them, at any time during the construction, objected to the improvement of the road across their lands in the manner and method it was being accomplished nor that the plaintiffs considered the defendant to be a trespasser. To the contrary, the evidence establishes that defendant's overall plan for improving and surfacing the road across plaintiffs' lands met with their approval. There was some dissatisfaction in connection with certain work or changes that the plaintiffs specifically requested defendants to do and with which the defendants did not comply to their complete satisfaction. The differences which resulted apparently prompted the commencement of the present actions after the improvement of the road had been completed.

The Court finds as follows:

(1) That the Wasilla-Big Lake Road was constructed by the Alaska Road Commission, an agency of the United States, in 1949 across land which was then a part of the public domain and that the United States neither needed nor exercised any reservation for its right-of-way.

(2) That plaintiffs, Alva J. Myers and Walter James Weaver, made their entries and initiated their rights to the lands involved subsequent to the construction of the road and with full knowledge of the reservation created by 48 U.S.C.A. § 321d.

(3) That plaintiffs, Alva J. Myers and Walter James Weaver, thereafter accepted patents containing said reservation and held title subject to the exercise of that right.

(4) That the improvement and relocation of the Wasilla-Big Lake Road in the year 1959 under Project DS–0510 (5) was the first exercise of the reservation contained in the patents issued to Alva J. Myers and Walter James Weaver by the United States of America.

(5) That the rights-of-way reserved by the United States extended 150 feet on each side of the center line of the road.

(6) That the road designed and constructed over plaintiffs' land was so designed and constructed so as not to exceed in width its reserved right-of-way.

(7) That plaintiffs, Alva J. Myers and Walter James Weaver, by their words and conduct acquiesced and consented to the acts of the defendant insofar as the location and width of the road construction are concerned.

(8) That plaintiffs, Alva J. Myers and Walter James Weaver, by their words and conduct, acquiesced and consented to the construction work performed by defendant and to the area in which the construction work was done.

Counsel for defendant United States of America is directed to prepare findings of fact and conclusions of law and a judgment in favor of defendants and against plaintiffs and in favor of the defendant United States of America and against the defendant McLaughlin, Inc., on its cross-claim and providing that the respective parties will each bear their own costs.